William J. O'COIN

v.

**WOONSOCKET INSTITUTION
TRUST COMPANY.**

No. 85–558–Appeal.

Supreme Court of Rhode Island.

Jan. 15, 1988.

William J. O'Coin, Jr., Woonsocket, Gerald J. Petros, Providence, Lauren E. Jones, Michael T. Eskey, Jones & Aisenberg, Providence, for plaintiff.

William R. Grimm, Gerald J. Petras, Hinkley, Allen, Tobin & Silverstein, Providence, for defendant.

OPINION

MURRAY, Judge.

This is an appeal by the plaintiff arising out of a judgment of the Superior Court granting a motion by the defendant for summary judgment. The plaintiff assigns as error that the trial justice misconstrued the applicable statute of limitation. The plaintiff further asserts that testimony given and documents produced by the defendant pursuant to a subpoena duces tecum were not subject to an absolute privilege. Because we hold as a matter of law that the plaintiff has sustained no legally cognizable injuries, we affirm the judgment of the trial court.

Initially we note that the granting of a motion for summary judgment is a drastic remedy, which should be applied with caution. In reviewing the same, this court applies the standards utilized by the trial justice. Only when our review reveals the existence of no material issues of fact and we find the moving party to be entitled to judgment as a matter of law will we uphold an order granting summary judgment. *Violet v. Travelers Express Co.,* 502 A.2d 347, 349 (R.I. 1985); *Barratt v. Burlingham,* 492 A.2d 1219, 1220 (R.I. 1985). Applying this standard to the case at bar, we conclude that the trial justice properly granted the motion. We further note that although we decide the matter before us upon a different ground than that utilized by the trial justice, we affirm the determination of the court below, which we deem correct. *In re Joseph J.,* 465 A.2d

150, 152 (R.I. 1983); *Costa v. Gagnon,* 455 A.2d 310, 313 (R.I. 1983).

The plaintiff, William J. O'Coin (O'Coin), is an attorney-at-law. His wife, Claire H. O'Coin was previously employed by the Rhode Island Housing Investment Fund (RIHIF or the fund). The fund issued a check for $2,000 to the Woonsocket Institution Trust Company, also known as the Woonsocket Institution for Savings, the Woonsocket Trust Company, and the Woonsocket Savings and Trust (the bank), defendant herein. The check was used to pay most of the balance of a personal note to the bank executed by O'Coin. Mrs. O'Coin had knowledge that the fund would issue the check prior to its issuance. She was later indicted on various counts of conspiracy and embezzlement, which indictments were later quashed solely because the grand jury was improperly constituted.

The indictment arose out of an investigation of the finances of the fund. In that connection, an employee of the auditor general's office telephoned an employee of the bank, Lucienne Moussas, and requested information about the $2,000 check issued by the fund to defendant bank to pay O'Coin's personal note.[1] The record does not clearly indicate whether Moussas orally disclosed any information, but we assume for purposes of this opinion that she did. In any event, the bank disclosed in two writings information relating to the partial payment by RIHIF of a personal loan made by the bank to O'Coin. One of the writings was signed by Moussas. The bank concedes that this information was not disclosed pursuant to a subpoena.

Later the bank, pursuant to a subpoena duces tecum, produced documents and a witness, Alfred R. Stokes, Jr., to testify thereto. Stokes testified at the trial of Peter Coehlo in Superior Court. The trial justice held that Stokes' testimony was both material and relevant. Because we hold that each disclosure complained of by plaintiff was compelled in open court, and was indeed material and relevant, plaintiff sustained no cognizable damages by virtue of Moussas' prior confidential disclosure to the auditor general that the $2,000 expended by RIHIF was personal in nature.

I

The gravamen of counts 1 and 2 of O'Coin's complaint is that he was damaged by virtue of the bank's disclosures to the auditor general, which he alleges were erroneous.[2] O'Coin also asserts that the bank breached a contractual duty owed to him not to reveal information disclosed by O'Coin by virtue of that relationship. The bank argues that O'Coin's damages were in the nature of a personal injury, and that recovery thereon is barred by G.L. 1956 (1969 Reenactment) § 9–1–14, as amended by P.L. 1976, ch. 188, § 1[3], which provides that actions to recover for personal injuries are barred after three years. O'Coin counters that even if his complaint were to be construed as one for personal injuries, the claim did not accrue until December of 1979, the date at which he asserts that he discovered the alleged contractual breach.

The plaintiff would take us into uncharted territory and have us address three pre-

---

**1.** The plaintiff claims that he received the $2,000 payment as consideration for work performed in connection with the submission of a grant proposal to the Ford Foundation. The plaintiff does "not recall" the content of said proposal, how many hours were spent in its preparation, nor can plaintiff produce an invoice supplied by him to RIHIF.

**2.** Because we hold that O'Coin has sustained no legally cognizable injury, *see infra,* part III, we do not reach the question whether said disclosures were erroneous. We note, however, defendant's argument that plaintiff's wife was indicted because her employer paid a substantial portion of a personal loan by the bank to plaintiff. O'Coin argues that said payment related to

a different loan than that which forms the basis of the instant suit. It would seem to be irrelevant *which* loan transaction formed the predicate of the payment in quo.

**3.** General Laws 1956 (1969 Reenactment) 9–1–14, as amended by P.L. 1976, ch. 188, § 1 provides in pertinent part:

"Limitation of actions for words spoken or personal injuries.—Actions for words spoken shall be commenced and sued within one (1) year next after the words spoken, and not after. Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after."

viously undecided questions in order to provide him with a remedy. He asks us first to determine that his injuries are contractual in nature, and thus subject to the then applicable six-year statute of limitation. General Laws 1956 (1969 Reenactment) § 9–1–13. Second, we are asked to determine that an implied contractual duty was breached and that plaintiff sustained damages thereby. Third, if we find that the injuries sustained by plaintiff are personal in nature, and thus subject to § 9–1–14, the three-year statute of limitation for personal injuries, we are asked to apply the "discovery" rule and hold that, as to O'Coin, the statute of limitation did not begin to run until he purportedly discovered his injury in December of 1979.

### A

Certain of our prior holdings may be construed as lending support to the proposition that the injuries sustained by plaintiff were contractual in nature. Recently we held in *Church v. McBurney*, 513 A.2d 22 (R.I. 1986), that although the plaintiff incurred physical injuries in an automobile accident, she stated a cause of action in contract against an attorney who did not timely file suit. In so holding we observed that it is the right being sued upon, not the injury sustained, that is determinative of the appropriate period of limitation. In *Church* we found the attorney-client relationship to be contractual in nature, *id.* at 24, and thus governed by § 9–1–13, the six-year statute of limitation.

Similarly, in *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 150, 282 A.2d 584, 588 (1971), we held that the six-year statute of limitation applied in an action to recover upon an insurance contract, and noted that the relationship sued upon was fundamentally one in contract. There, we found the tortious injury to be merely an incidental element in the insured's suit against the insurer.

Assuming, arguendo, the relation between plaintiff as debtor and the bank as creditor to be contractual in nature, plaintiff urges that we find that the bank, by revealing confidential information without legal compulsion, breached an implied term in the contract.

The plaintiff cites holdings in other jurisdictions that so hold, with regard to depositors, not debtors. Thus in *Peterson v. Idaho First National Bank*, 83 Idaho 578, 588, 367 P.2d 284, 290 (1961), the Supreme Court of Idaho held that the defendant bank breached an implied contract with its depositor to not divulge information concerning the depositor's transactions with the bank, absent legal compulsion. In *Peterson* the plaintiff's employer had previously requested that the bank notify him in the event that one of his employees "might be doing anything that might bring discredit to the company." *Id.* at 582, 367 P.2d at 286. The manager of the bank notified the plaintiff's employer that the plaintiff had issued a large number of checks that were returned for want of sufficient funds. *See also Suburban Trust Co. v. Waller*, 44 Md.App. 335, 408 A.2d 758 (1979) (bank reported to police large deposit of sequentially numbered $50 and $100 bills, and supplied photographs of depositor, who was mistakenly indicted for robbery; held, that absent compulsion by law, bank may not make disclosures concerning depositor's account without express or implied consent by depositor); *but see Indiana National Bank v. Chapman*, 482 N.E.2d 474 (Ind.App.1985) (bank responded without subpoena to questioning initiated by law enforcement official; held, that bank impliedly contracts only that it will not reveal customers financial status *unless public duty arises*); *Graney Development Corp. v. Taksen*, 92 Misc.2d 764, 400 N.Y.S.2d 717 (1978) (defendant bank loaned plaintiff money and plaintiff defaulted; bank revealed default to prospective lender and seller of property who then declined to complete transaction; held, relationship between bank and plaintiff was solely that of creditor and debtor, not agent and principal; no implied contractual agreement regarding confidentiality).

Interestingly, plaintiff cites to the well known English case *Tournier v. National Provencial and Union Bank of England*, 1 K.B. 461, 480 (1924), which many regard

as the first modern formulation of the implied contractual duty of confidentiality. Less often noted is the observation of Atkin, L.J., contained therein:

> "I think it safe to say that *the obligation not to disclose information* such as I have mentioned *is subject to the qualification that the bank have the right to disclose such information when,* and to the extent to which *it is reasonably necessary for the protection of the bank's interests,* either as against their customer or as against third parties in respect of transactions of the bank for or with their customer, *or for protecting the bank, or persons interested, or the public, against fraud or crime.*" (Emphasis added.) *Id.* at 486.

It is not at all clear that the *Tournier* court would find for plaintiff herein in view of its "public interest, crime-fraud" exception.

### B

The bank urges us to ignore the fact that O'Coin's asserted injuries arose in the context of a debtor-creditor or fiduciary relationship, and instead focus on the character of said injuries, which the bank casts as injuries to the person. The Tennessee Supreme Court, in *Pera v. Kroger Co.,* 674 S.W.2d 715 (Tenn.1984), held that the wrongful dishonor of a check constituted a personal injury and barred an action to recover therefor based upon the applicable statute of limitation. The court observed that the gravamen of the action, and not its designation as tort or contract, determines the applicable period of limitation. *Commerce Oil Refining Corp. v. Miner,* 98 R.I. 14, 20–21, 199 A.2d 606, 610 (1964) ("injuries to the person" as used in § 9–1–14 are to be construed comprehensively and comprehend nonphysical injuries; thus action for malicious use of process falls within ambit of statute). We note that *Commerce* excepts from its holding rights created by contract or property, both of which are asserted by plaintiff.

### C

The plaintiff correctly points out that even if this court were to view the instant action as sounding in tort, said holding would not be dispositive of the question whether the action was barred by the statute of limitation, for the issue of when the action "accrues" for purposes of § 9–1–14 remains open. In *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968), we adopted the "discovery" rule in medical malpractice cases, holding that an action does not commence to run in such suits until the plaintiff discovers or should have discovered that he has sustained an injury. Later we applied the "discovery" rule in actions relating to improvements in real property, *Lee v. Morin,* 469 A.2d 358 (R.I. 1983), and in drug product-liability actions. *Anthony v. Abbot Laboratories,* 490 A.2d 43 (R.I. 1985). However, in *Fuscellaro v. Industrial National Corp.,* 117 R.I. 558, 563, 368 A.2d 1227, 1231 (1977), we declined to apply the discovery rule in an action against a bank for cashing checks upon forged endorsements, holding that "[t]he finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of [financial] instruments * * *." *Id.*

### D

▆ We decline to resolve today whether an action predicated upon an alleged breach of a duty by a bank to hold information in confidence sounds in contract or tort. We likewise leave to another day the question whether such an action accrues at the time the breach occurs, or at such later time when the party injured thereby discovers the injury. Nor do we reach the question whether such an injury was legally cognizable prior to the enactment of ch. 119 of Public Laws 1975, § 9–1–28.1, the right to privacy statute, in view of our holding, *see infra,* part III, that plaintiff has sustained no legally cognizable damages. *See Pickering,* 109 R.I. at 149, 282 A.2d at 588 (citing *Lessard v. New Hampshire Insurance Company,* 106 R.I. 275, 258 A.2d 793 (1969)). Finally we note that plaintiff asserts that his action sounds in contract and observe that nominal and punitive damages do not lie in such actions, absent the most egregious circumstances,

which we hold as a matter of law are not here present.

## II

■ The plaintiff, in count 3 of his complaint, attempts to recover from the bank for disclosures compelled in the Superior Court trial of Peter Coehlo, by its employee, Stokes, who responded to a subpoena duces tecum. Stokes was directed, over objection, to answer questions relating to the same subject matter whose revelation by employee Moussas forms the predicate of counts 1 and 2 of plaintiff's complaint, disposed of in part I, *supra.* The information disclosed by Stokes in open court pursuant to compulsion of legal process was virtually identical in all pertinent respects to that disclosed earlier by Moussas. The trial justice found the subject matter to be relevant and material. We hold that when a witness is asked a question, and no objection is made thereto, or, if made, is overruled, it is the duty of the witness to answer. The witness is not charged with the duty of determining whether the information sought is relevant or material. Such questions are solely the province of the trial court, *Greenberg v. Ackerman,* 41 N.J.Super. 146, 150, 124 A.2d 313, 315 (1956), and the witness cannot be held liable in a civil suit for his answer. *Baggett v. Grady,* 154 N.C. 342, 344–45, 70 S.E. 618, 619 (1911). To hold otherwise would be manifestly unfair to the witness, who often, but not always is untrained in legal matters, timid, and appears at the behest of some third party. *Korb v. Kowaleviocz,* 285 Md.App. 699, 702–03, 402 A.2d 897, 898–99 (1979).

To date, this court has not addressed the question of the appropriate scope of the testimonial privilege to be accorded witnesses, and particularly those who are compelled to testify in a judicial proceeding. The English Rule, adopted by Maryland, affords a witness an unconditional privilege regarding testimony given. *Id.* at 701–02, 402 A.2d at 898. The American Rule, applicable in the vast majority of states, extends a testimonial privilege provided that the testimony is relevant and material. *Id.* We leave to another day the decision which rule is applicable, for the testimony given by Stokes is privileged even under the more narrow American Rule.

## III

■ The plaintiff, in counts 1 and 2 of his complaint, seeks recovery under various theories for an earlier disclosure of the identical information that was later compelled in open court subject to an absolute testimonial privilege. This he cannot do. O'Coin claims that he incurred damages as a result of public disclosure of embarrassing information regarding the payment of a personal loan of O'Coin by RIHIF. In his brief plaintiff acknowledges that the information became public in testimony given at trial. We have seen that said testimony was subject to an absolute privilege. Thus any damages sustained by virtue of the earlier disclosure were de minimis. *See Provenza v. Rinaudo,* 586 F.Supp. 1113, 1118 (D.Md. 1984) (in suit construing federal statute, bank revealed information pursuant to summons during proscribed period; IRS returned records, which were then produced through proper procedure; held, in privacy action, that although bank should have withheld information, where no information was revealed by bank defendants that would not have been revealed otherwise, there was no violation of rights); *Hartford National Bank and Trust Co. v. DiFazio,* 6 Conn.App. 576, 586, 506 A.2d 1069, 1074–75 (1986) (mortgagor owners of apartment complex undergoing attempted conversion to condominia brought counterclaim against mortgagee bank alleging, inter alia, that bank employee who absconded with condominium mortgage applications was responsible for project's failure; held, bank not liable where failure of project was due largely to myriad of governmental requirements and mortgagor's tenuous financial stability; employee's role deemed peripheral).

We have considered the plaintiff's other contentions and find them to be without merit.

The plaintiff's appeal is denied and dismissed, and the judgment entered in the Superior Court is affirmed.