**ONDINE SHIPPING CORPORATION,**
**Plaintiff, Appellant,**

v.

**Robert CATALDO, Etc., et al.,**
**Defendants, Appellees.**

No. 93–2378.

United States Court of Appeals,
First Circuit.

Heard May 4, 1994.

Decided May 25, 1994.

Michael J. Malinowski, with whom Thomas F. Holt, Jr. and Kirkpatrick & Lockhart, Boston, MA, were on brief, for appellant.

Gordon P. Cleary, with whom Vetter & White, Providence, RI, was on brief, for appellee Robert Cataldo, Trustee in Bankruptcy.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

SELYA, Circuit Judge.

The focal point of this appeal is an 80–foot racing yacht, the ONDINE, built for plaintiff-appellant Ondine Shipping Corporation by a Wisconsin shipbuilder, Palmer Johnson, Inc., at a cost of roughly $1,500,000. The ONDINE encountered rough waters from the very start, and Palmer Johnson seemed unable to bring the vessel up to speed. In 1982, the owner contracted with Newport Offshore, Ltd. (NOL) for extensive refurbishing aimed at repairing defects and rendering the yacht raceworthy.

The undertaking proved to be ill-starred. *See In re Newport Offshore, Ltd.*, 155 B.R.

616, 617–18 (Bankr.D.R.I.1993) (explicating factual background of dispute). After much time and money had been expended, the yacht, even when velivolant, remained uncompetitive. Bitterly disappointed by NOL's restorative efforts, plaintiff brought suit for negligence and breach of contract in the United States District Court for the District of Rhode Island. Soon thereafter, NOL filed a Chapter 11 petition in the bankruptcy court. Many procedural twists and turns ensued, none of which are material here. Thus, we turn the clock ahead to 1993, when the bankruptcy court, having substituted NOL's trustee in bankruptcy, Robert Cataldo, as the party defendant, proceeded to try plaintiff's claim.

With the acquiescence of the parties, the bankruptcy judge applied the substantive law of Rhode Island to the controversy. He determined "that NOL did not perform its obligations either skillfully or in a workmanlike manner." *Id.* at 619. On that basis, the judge found for the plaintiff on the question of liability. *See id.* at 620. Nevertheless, he ruled that there had been a total failure to prove damages and limited plaintiff's recovery to a nominal sum ($1,000). *See id.* at 620–21.

Invoking 28 U.S.C. § 158(c), plaintiff sought review in the district court. That forum, too, proved inhospitable; in an *ore tenus* bench decision, the district court found the bankruptcy judge's evaluation of plaintiff's claim "correct, as a matter of fact, and as a matter of law." This appeal followed.

■ When a trial court produces a lucid, well-reasoned opinion that reaches an appropriate result, we do not believe that a reviewing court should write at length merely to put matters in its own words. *See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993). So it is here. We agree with both of the courts below that the record in this case contains no competent proof of damages, and that, therefore, plaintiff's attempt to recover more than nominal damages runs aground. Consequently, we affirm the judgment for substantially the reasons articulated in the bankruptcy court's rescript, *see In re Newport Offshore, Ltd., supra,* and endorsed in the district court's

bench decision. We pause only to add five observations.

*First:* Plaintiff, having jettisoned its trial counsel, takes a new tack on appeal. It insists that the record contains evidence of what it paid to NOL; that Rhode Island law permits restitution as a measure of damages where a contracting party's performance has proven valueless, *see, e.g., National Chain Co. v. Campbell,* 487 A.2d 132, 135 (R.I.1985) (recognizing possible applicability of restitutionary measure of damages when "the contractor's performance is worthless and the work has to be redone completely"); and that it was entitled to recover at least the monies it expended (totalling several hundred thousand dollars). There are two convincing answers to this plaint.

The long, fact-specific answer involves sifting the record; while the evidence indicates that NOL performed in a maladroit fashion, and the judge so found, it overstates the proof to say that NOL's performance was "worthless." To the contrary, many repairs were satisfactorily effected and the yacht raced competitively for almost three years after NOL completed its work. *See In re Newport Offshore,* 155 B.R. at 618.

■ We eschew a detailed analysis, however, for the short, dispositive answer is that plaintiff never broached this argument before the bankruptcy court. That ends successor counsel's rescue mission. Not only is it "a bedrock rule" that a party who has not presented an argument below "may not unveil it in the court of appeals," *United States v. Slade,* 980 F.2d 27, 30 (1st Cir.1992), but also, no principle is more firmly anchored in the jurisprudence of this circuit, *see Teamsters, Etc., Local Union No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992).

■ Plaintiff strives to elude this coral reef by asserting that its argument involves no new facts, only a new theory, and, thus, is not barred. This assertion is neither original nor persuasive. We recently rejected precisely the same proposition, holding that raise-or-waive principles apply with full force when an appellant tries to present a neoteric theory concerning the legal effect of facts adduced at trial. *See Slade,* 980 F.2d at 31.

Indeed, this ship sailed many moons ago; the holding in *Slade* caps a long, unbroken line of precedent to like effect. *See, e.g., United States v. Dietz*, 950 F.2d 50, 55 (1st Cir.1991); *Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987).

■ **Second:** It is true, as plaintiff suggests, that an appellate court possesses the power, in the exercise of its sound discretion, to submerge the raise-or-waive rule if doing so will prevent a gross miscarriage of justice. *See Slade*, 980 F.2d at 31; *United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982). But this is a long-odds exception that must be applied sparingly. It is reserved for "the exceptional case." *United States v. La Guardia*, 902 F.2d 1010, 1013 (1st Cir.1990). The case at bar does not qualify.

■ Here, plaintiff—for whatever reason—seemingly made a conscious choice to bypass the accepted way of proving damages and to vie for a much larger prize.[1] That endeavor having capsized, it is fitting that plaintiff bear the readily foreseeable consequences. We do not think that justice miscarries when a court rebuffs a suitor's efforts to obtain clearly excessive damages on an insupportable legal theory and leaves the suitor holding an empty (or near-empty) bag. *Cf. Quinones–Pacheco v. American Airlines, Inc.*, 979 F.2d 1, 6 (1st Cir.1992) (upholding take-nothing verdict when plaintiffs failed to prove their damages). Overreaching, like virtue, is often its own reward.

■ **Third:** Citing *O'Coin v. Woonsocket Inst. Trust Co.*, 535 A.2d 1263 (R.I.1988), plaintiff posits that Rhode Island law bars nominal damage awards in contract cases. This theorem, too, is procedurally defaulted.[2] And, moreover, it lacks substance: we think that the language on which plaintiff relies, *see id.* at 1266, is confined to the peculiar facts of the *O'Coin* case, and that Rhode Island, like virtually every other American jurisdiction, recognizes nominal damages as proper when a claimant proves injury to property, but fails to prove the amount of damages, *see, e.g., Murphy v. United Steelworkers of America, Local No. 5705*, 507 A.2d 1342, 1346 (R.I.1986); *Stillman v. Prew*, 94 R.I. 39, 177 A.2d 626, 628 (1962); *Zuccaro v. Frenze*, 76 R.I. 391, 71 A.2d 277, 278 (1950); *see also* 5 Arthur L. Corbin, *Corbin on Contracts* § 1001 (1964 & Supp.1992) (collecting cases from other jurisdictions).

*Fourth:* In its reply brief, plaintiff attempts to make the bankruptcy judge a scapegoat. It argues for the first time that the judge misled plaintiff into believing that it had proven its damages. This is a cheap shot, easily deflected.

■ In the first place, it is settled law that an appellant waives arguments which should have been, but were not, raised in its opening brief. *See Playboy Enterps., Inc. v. Public Serv. Comm'n*, 906 F.2d 25, 40 (1st Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990); *Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 86 (1st Cir.1990). And, here, the procedural default is accentuated because plaintiff never surfaced this supposed grievance in the district court.

In the second place, the record plainly reveals that plaintiff's counsel, not the bankruptcy judge, was the author of plaintiff's misfortune. The trial transcript speaks eloquently in this respect. Our perscrutation of it persuades us that the judge acted appropriately in every particular.

■ Third, and last, in our adversary system of justice it is the parties' responsibility to marshal evidence and prove their points. Litigants cannot expect the court to do their homework for them. *See, e.g., Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18

---

**1.** As the bankruptcy court indicated, Rhode Island law generally incorporates "benefit-of-the-bargain" damages in contract disputes. *See In re Newport Offshore*, 155 B.R. at 620; *see also National Chain*, 487 A.2d at 134–35. Plaintiff did not offer evidence from which such expectancy damages could be computed. Instead plaintiff shot for the moon, seeking a $3,000,000 award on a theory of damages that had no foundation in Rhode Island law.

**2.** Plaintiff hoists this flag for the first time in this court. While plaintiff can perhaps be excused for not making the argument in the bankruptcy court—plaintiff may not have anticipated that the bankruptcy judge was considering an award of nominal damages—there is no satisfactory excuse for its failure to advance the argument in the district court.

F.3d 1, 13 n. 17 (1st Cir.1994); *Foley v. City of Lowell*, 948 F.2d 10, 21 (1st Cir.1991). In the final analysis, "[c]ourts, like the Deity, are most frequently moved to help those who help themselves." *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir.1988).

■ *Fifth:* Plaintiff suggests that it is entitled to prejudgment and post-judgment interest under R.I.Gen.Laws § 9–21–10.[3] This suggestion is not well founded. In *Murphy*, 507 A.2d at 1346, the Rhode Island Supreme Court held that section 9–21–10 does not apply to awards for punitive damages. The court reasoned that, in limiting the statute to "pecuniary damages," the legislature meant "pecuniary" to be synonymous with "compensatory," thus excluding *both* punitive and nominal damages. *See id.; see also Rhode Island Turnpike & Bridge Auth. v. Bethlehem Steel Corp.*, 446 A.2d 752, 757 (R.I.1982) (describing purpose of statute). Since a state's highest court is the best authority on the meaning of a state statute, *see Daigle v. Maine Med. Ctr.*, 14 F.3d 684, 689 (1st Cir.1994), we accept the Rhode Island Supreme Court's conclusion that R.I.Gen.Laws § 9–21–10 does not pertain to nominal damage awards,[4] and we so hold.

We need go no further.[5] There is nothing very complicated about this case. Courts have repeatedly warned litigants that damages "must be computed in some rational way upon a firm factual base." *Reliance Steel Prods. Co. v. National Fire Ins. Co.*, 880 F.2d 575, 578 (1st Cir.1989). Here, plaintiff ignored the storm warnings and botched its presentation at trial. The bankruptcy court found this failure of proof to possess pivotal importance. In subsequent proceedings, plaintiff has struggled to overcome the effects of its own ineptitude. We find it unsurprising that these efforts come to naught: most factbound litigation is won or lost in the trial court—and properly so.

*Affirmed.*

3. The state statute reads in pertinent part:

In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. Post judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein.

R.I.Gen.Laws § 9–21–10. Because we find that this statute, by its terms, does not pertain to awards of nominal damages, *see infra*, we need not consider the trustee's contention that 11 U.S.C. § 502(b)(2), disallowing claims for unmatured interest, preempts state law on prejudgment interest in the circumstances of this case.

4. To be sure, insofar as the statement in *Murphy* encompasses nominal damages, it is dictum—but it is considered dictum and, thus, worthy of our trust. *See Posadas de Puerto Rico Assoc., Inc. v. Asociacion de Empleados de Casino*, 873 F.2d 479, 482 (1st Cir.1989) (explaining that federal courts ordinarily defer to considered dictum of a state's highest court in determining a state law issue); *Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 115–16 (1st Cir.1988) (similar), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *see also Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 459 (1st Cir.1992) (stating general rule that courts should give weight to dictum that appears "considered as opposed to casual").

5. We decline plaintiff's invitation to speculate about the priority of its claim should the estate's funds prove insufficient to pay the award. That issue is purely hypothetical and, therefore, is not properly before us.