In re Baldev SINGH, Debtor.

David M. Nickless, Trustee, Plaintiff,

v.

FDIC, As Liquidating Agent for Heritage Bank for Savings, Defendant.

Bankruptcy No. 95–44101 JFQ.
Adversary No. 97–4340.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 18, 1999.

Frank M. Cadigan, FDIC Legal Division, East Hartford, CT.

Nicholas Katsonis, de Verges & Katsonis, Worcester, MA.

David M. Nickless, Nickless & Phillips, Fitchburg, MA.

Thomas W. Tavenner, Jr., Boston, MA.

## DECISION ON REMAND

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

This is an action of tort for negligence brought by David M. Nickless (the "Trustee"), as chapter 11 trustee of the estate of Baldev Singh, against the Federal Deposit Insurance Corporation, as liquidating agent of Heritage—NIS Bank for Savings ("FDIC"). It is before this court after remand from the United States District Court for the District of Massachusetts.

### I. UNDISPUTED FACTS

The parties' pretrial stipulations and the undisputed evidence at trial disclose the following. On January 28, 1974, Baldev Singh (the "Debtor") purchased real estate located at 207–211 Main Street, Northampton, Massachusetts. The property contains two commercial units located on the first floor and six residential units located on the second and third floors. In October of 1988 the Debtor refinanced the mortgage indebtedness on the property with Heritage—NIS Bank for Savings ("Heritage"). The refinancing documents in-

clude the following: a $375,000 term note, a $100,000 demand note, a collateral assignment of rents, and two mortgages.

Commencing with fiscal year 1989, the Debtor failed to pay real estate taxes on the property. Because of this and other defaults, Heritage through a subsidiary took possession on October 13, 1992 and retained North River Management ("North River") to manage the property. On December 4, 1992, the Massachusetts Superintendent of Banks declared Heritage insolvent and appointed the FDIC as liquidating agent. The FDIC continued North River as managing agent. Real estate taxes continued to be unpaid. Neither North River nor the FDIC collected tax adjustments due under the leases with the two commercial tenants. The management of the property by Heritage or the FDIC, through North River, lasted from October of 1992 through October of 1997. The FDIC eventually scheduled a foreclosure sale for September 14, 1995. The foreclosure was stayed by the Debtor's filing of a chapter 11 petition with this court on September 13, 1995.

## II. TRIAL

The Trustee charges the FDIC with negligent management of the property. His allegations include negligent action or nonaction on the part of the FDIC in six respects: (1) failure to pay real estate taxes, which resulted in accrual of interest and penalties in excess of interest on the mortgage debt, (2) agreeing to a below-market rent with one of the commercial tenants, (3) failure to collect past due rent from this and another tenant, (4) failure to enforce tax-escalation clauses in the two commercial leases, (5) failure to invest the collected rents in an interest-bearing account, and (6) failure to reduce the commissions paid to North River to reflect the actual amount of rents which North River collected.

The dispute at trial centered primarily on what standard of conduct is imposed on a mortgagee in possession by Massachu-

setts law and whether the FDIC had failed to comply with that standard. I ruled that under Massachusetts case law the standard is one of reasonable care. Concluding that the FDIC's possession confirmed the worst fears of bureaucratic bumbling, I found it had, through North River, failed to exercise reasonable care in its management of the property. Although absolving it from charges of negligent roof maintenance, I found the FDIC negligent with respect to each of the six categories of conduct enumerated above, awarding damages totaling $62,456. Judgment was entered in that amount plus interest.

The award of $62,456 in damages is broken down as follows:

| | |
|---|---:|
| Alexander's Jewelers (a commercial tenant) | |
| Uncollected back rent | $14,400 |
| Uncharged rent | 18,600 |
| Uncollected tax escalation | 1,000 |
| Coffee Kingdom (a commercial tenant) | |
| Uncollected tax escalation | 2,000 |
| Interest lost on funds not placed at interest | 5,000 |
| Commissions paid North River based on rents not collected | 3,456 |
| Interest due on unpaid taxes in excess of loan interest | 18,000 |
| Total | $62,456 |

## III. APPEAL

On appeal, the FDIC did not challenge the imposition upon it of a standard of reasonable care or the finding it had been negligent. The FDIC instead contended it was protected by a provision in the collateral assignment of rents. This is an argument which it briefly touched upon at trial. In his opening statement, counsel for FDIC referred to the FDIC's failure to apply all funds on hand to the debt, stating: "under the collateral assignment of rents in the mortgage documents, it was totally discretionary, Your Honor, on what the FDIC could do with those rents." (T. 34–35). In his closing argument counsel turned to the charge that the FDIC had not paid current real estate taxes, arguing that the Debtor continued to be assessed for these taxes and that the Debtor remained the owner. (T. 201). Counsel then stated: "In addition, the collateral assignment of rents, which again is on the record, specifically states that principal

and interest shall be paid first. The FDIC complied with that contractual duty." (T. 201–202).

The District Court was troubled by the effect the language in the collateral assignment of rents might have upon the FDIC's asserted duty to pay taxes. It referred to Massachusetts General Laws chapter 244, sections 11–17B and 20, as well as *Henry v. Mansfield Beauty Academy, Inc.*, 353 Mass. 507, 233 N.E.2d 22, 24 (1968), where the court ruled that a contractual provision cannot shield a party from responsibility for violation of a statutory duty. The District Court observed that neither of the parties had devoted "any consideration whatsoever" to the effect of the Massachusetts statutes on the collateral assignment of rents, and that I had not entered a ruling in this regard. Expressing no opinion on the merits, it remanded the case to this court for further proceedings.

## IV. THE COLLATERAL ASSIGNMENT OF RENTS

Paragraph 2 of the collateral assignment of rents (the "assignment") gives Heritage the "power and authority" to do the following:

(a) To enter upon and take possession of the Premises; to demand, collect and receive from the tenant or tenants now or hereafter in possession of the Premises, or any part thereof, or from other persons liable therefore, all of the rents and revenues from such tenant or tenants or other persons, which may now be due and unpaid and which may hereafter become due; to institute and carry on all legal proceedings necessary for the protection of the Premises, including such proceedings as may be necessary to recover the possession of the whole or of any part of the Premises; to institute and prosecute any and all suits for the collection of rents and all other revenues from the Premises which may now be due and unpaid and which may thereafter become due; to institute and prosecute summary proceedings for the removal of any tenant or tenants or other persons from the Premises; and to pay the cost and expenses of all such suits and proceedings out of the rents and other revenues received;

(b) To maintain the Premises and keep the same in good repair, to pay, out of the rents and other revenues received, the costs thereof and of all services of all employees, including their equipment, and of all of the running expenses and expenses of maintaining and keeping the Premises in good repair and in proper condition, also all interest on the principal sum of notes and any mortgages now due and unpaid and hereafter to become due, and all of the above mentioned principal sum of notes and any mortgages now due and unpaid and hereafter to become due, and also all taxes, assessments and water rates, sewer charges now due and unpaid and which may hereafter become due and a charge or lien upon the Premises and the premiums on policies of fire insurance now or hereafter affected by the said LENDER;

(c) To rent or lease the whole or any part of the Premises for such term or terms and on such conditions as to [sic] the said LENDER may deem proper;

(d) To employ an agent or agents to rent and manage the Premises and to collect the said rents and other revenues thereof, and to pay the reasonable value of its or their services out of the rents and revenues received.

Paragraph 3 of the assignment grants Heritage authority with respect to the placement of insurance, a subject not relevant here.

Paragraph 4 states:

4. The LENDER, in its sole discretion, shall from time to time, determine to which one or more of the purposes aforesaid the said rents and revenues shall be applied and the amount to be applied thereto, except that payment of

principal and interest on all mortgages shall be paid first.

As stated, at trial FDIC counsel referred on two occasions to the terms of paragraph 4, under which "in its sole discretion" the lender may "determine to which one or more of the purposes aforesaid" rents would be applied "except that payment of principal and interest on all mortgages shall be paid first." Counsel made no reference to paragraph 2(c), which authorizes the lender to rent or lease premises "for such term or terms and on such conditions as to [sic] the said LENDER may deem proper...."

The assignment, in the context of this case, raises a number of questions: (1) whether, and the extent to which, its terms apply to the Trustee's six charges of negligent conduct; (2) to the extent its terms do apply to the Trustee's charges, whether they constitute an agreement exculpating the lender from liability for negligence; (3) if there is an agreement to exculpate the lender from liability for negligence, whether that agreement is valid under policy grounds; and (4) if there is a valid exculpatory agreement as to any act or acts, whether the FDIC waived its rights under the agreement by not arguing the question at trial. I turn to each of these questions.

### A. Application of Assignment's Terms to Acts Found Negligent

The terms of the assignment do not have the broad reach contended for by the FDIC. There is no provision in the assignment that could have arguable application to failure to use reasonable care to collect base or escalator rents due or failure to deposit collected rents at interest.

■ The commission question is more complex. Paragraph 4, when read alone, might cover the excess commissions paid North River. It authorizes the lender "in its sole discretion" to determine "the amount" paid for such expenses. But paragraph 4 should be read in light of the more specific language of paragraph 2(d),

which authorizes the lender to pay the "reasonable value" of management services. I conclude from this that paragraph 4 is not intended to authorize unreasonable management fees. A management commission based on uncollected rent is unreasonable. So the FDIC has no protection here.

■ The assignment does, however, have language which applies to a failure to pay taxes and the setting of rental terms. Paragraph 4 gives the lender sole discretion to determine for which of the "purposes aforesaid" rents are to be applied. Taxes are among the expenses previously mentioned, so they come within the "aforesaid purposes." Paragraph 2(c) expressly covers the setting of rental terms, authorizing as it does rentals on "such conditions as to [sic] said LENDER may deem proper."

### B. Whether, and to What Extent, Paragraphs 2(c) and 4 Constitute Exculpatory Provisions

■ Nowhere in the assignment is there a provision stating the lender is not to be held liable for negligence in its management of the property. The assignment instead speaks in terms of authority to rent the premises on such conditions "as to [sic] the said LENDER may deem proper" and to pay expenses as the lender "in its sole discretion, shall from time to time, determine...." Are these provisions equivalent to language stating the lender shall not be liable for negligence in setting rental terms and with respect to nonpayment of taxes?

Only the payment authorization expressly uses language of discretion. However, I interpret the phrase in the rental authorization, "as to [sic] the said LENDER may deem proper," to also leave the rental terms in the discretion of the lender.

I conclude that the grant of discretion to the FDIC, as the lender's successor, with respect to payment of taxes and fixing of rents is a limited grant of immunity from

liability for negligence. The grant gives protection as to rental terms and tax payments only if the FDIC, or North River as its agent, actually exercised its discretion with respect to them. The exercise of discretion, by its very nature, involves a conscious thought process.

When the FDIC through North River agreed to a below-market rental from Alexander's Jewelers it obviously made a conscious decision on the matter. This is so even though it may not have realized the rent was less than market. So it is protected by Paragraph 2(c) of the assignment.

The failure to pay taxes is another matter. Because all tax bills continued to be mailed to the Debtor, neither North River nor the FDIC ever saw them. Based on a further review of the testimony, I find they gave taxes no thought whatsoever. Paragraph 4 therefore affords the FDIC no protection against the Trustee's allegation of negligent failure to pay current real estate taxes.

### C. Validity of Exculpatory Clauses on Policy Grounds

■ The assignment therefore operates to protect the FDIC from liability for negligence only with respect to the below-market rental agreement. Massachusetts courts enforce a clause indemnifying a party to a contract from the consequences of his negligence. See, e.g., Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 509 N.E.2d 1190, 1193 (1987); Lee v. Allied Sports Assocs., Inc., 349 Mass. 544, 209 N.E.2d 329, 332 (1965).

■ The Trustee seeks to evade this principle by asserting that this case involves a purported waiver of statutory rights, arguing such rights may not be waived. He relies upon chapter 244, section 20, which reads as follows:

> If the mortgagee or person claiming or holding under him has had possession of the land, he shall account for rents and profits, and be allowed for all

amounts expended in reasonable repairs and improvements, for all lawful taxes and assessments paid and for all other necessary expenses in the care and management of the land. A balance of such account, if due from him, shall be deducted from the debt due on the mortgage; if due to him, shall be added to the debt, and paid or tendered as such.

Mass.Ann.Laws ch. 244, § 20 (Law. Co-op.1986).

There are three defects in the Trustee's argument. In the first place, section 20 does not impose an obligation of due care upon a mortgagee in possession. That obligation is created by case law. See, e.g., Altobelli v. Montesi, 300 Mass. 396, 15 N.E.2d 463 (1938); Fletcher v. Bass River Sav. Bank, 182 Mass. 5, 64 N.E. 207 (1902); Gerrish v. Black, 104 Mass. 400 (Mass.1870); Miller v. Lincoln, 72 Mass. 556 (Mass.1856). Section 20 has another purpose. It is located within chapter 244 in a group of sections entitled "Redemption." Section 18 grants the right to redeem and section 19 requires the redeeming mortgagor to tender the amount of the debt. Section 20 merely obligates the mortgagee in possession to account for rents and profits upon redemption; an excess of rent over expenses is to be deducted from the debt and a deficiency is to be added. In so stating, the statute impliedly authorizes the mortgagee to collect rents and to pay expenses, including taxes. But it imposes no obligation to do so or to use reasonable care in so doing.

■ The Trustee's case would fare no better if the statute imposed a duty of reasonable care. It is true that the waiver of a statutory right is invalid in a negligence action for personal injuries. See, e.g., Henry v. Mansfield Beauty Academy, Inc., 353 Mass. 507, 233 N.E.2d 22 (1968) (waiver ineffective in defense of personal injury caused by student hair dresser who was unregistered in violation of statute). But a statutory right may be waived if it is designed for the protection of property rights of individual parties rather than for

the protection of the general public, *Continental Corp. v. Gowdy,* 283 Mass. 204, 186 N.E. 244 (1933), or if the waiver is in the context of a commercial transaction not affecting the public interest. *See Canal Elec. Co. v. Westinghouse Elec. Corp.,* 406 Mass. 369, 548 N.E.2d 182, 187–88 (1990). This is a commercial transaction involving property rights and not affecting the public interest.

■ The death knell to the Trustee's statutory duty argument is this. He raised it for the first time on appeal. At trial he relied only upon the duty of care imposed by common law upon a mortgagee in possession. A contention raised for the first time on appeal is waived. *See, e.g., Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 772 n. 9, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *United States v. Alvarez–Sanchez,* 511 U.S. 350, 360 n. 5, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *Ondine Shipping Corp. v. Cataldo,* 24 F.3d 353, 355–56 (1st Cir.1994).

### D. Whether the FDIC Waived Exculpatory Rights Concerning Rental Terms

■ The FDIC's defense at trial consisted, for the most part, of denying that a mortgagee in possession owes a duty of reasonable care under Massachusetts case law and in rebutting the Trustee's negligence case. Although the assignment was introduced without comment at the beginning of trial as an uncontested exhibit, the FDIC referred to the assignment only in an off-hand manner, once in its opening and once in its closing.

Off-hand reference or not, the FDIC is entitled to the rights which its counsel urged upon the court in those references. As previously recounted, both references were to the lender's discretionary authority under paragraph 4 relating to payment of expenses. This has application here only to the FDIC's failure to pay real estate taxes, which resulted in accrual of interest and penalties in excess of interest accruing on the mortgage debt. Indeed,

counsel made it clear in his argument that he was asserting rights under the assignment only in defense to the Trustee's allegations of negligence for nonpayment of taxes. At no time during trial did the FDIC seek to use paragraph 2(c) of the assignment as a defense to the Trustee's allegation that it was negligent in making a below-market rental arrangement with Alexander's Jewelers. A defense not raised at trial is waived and, absent exceptional circumstances, is not reviewable on appeal. *See id.* No exceptional circumstances are present here. The District Court's decision of remand refers to the same statements made by FDIC counsel in his opening and closing. I interpret that decision as not deviating from the general rule that arguments not made at trial are waived.

The FDIC has therefore waived any argument that paragraph 2(c) protects it from the Trustee's charge that it was negligent in making a below-market rental arrangement with Alexander's Jewelers.

### E. Summary

In summary, the various clauses in the assignment protect the FDIC from none of the Trustee's charges of negligence. They do not by their terms cover the excess commissions paid North River, the FDIC's failure to attempt to collect overdue rents (base or escalator), or its failure to deposit collected rents at interest. Although the clause does apply to an agreement for below-market rents and nonpayment of current taxes, they give the FDIC no protection here either, for different reasons. By never referring at trial to clause 2(c) concerning rental terms the FDIC waived that clause's protection. By never giving any consideration whatsoever to paying current real estate taxes the FDIC failed to bring itself within the protection available under paragraph 4.

### V. TERMS OF $375,000 PROMISSORY NOTE

In its brief on remand the FDIC observes that the $375,000 note contains a

provision stating that "the Bank shall have no duty as to collection or protection of any collateral held by it or the income thereon, nor as to the preservation of any rights pertaining thereto." It now asserts exculpatory rights under this provision. Any such rights have also been waived. FDIC counsel uttered not a whisper about this note provision during trial, and never raised the matter on appeal.

In accordance with the foregoing, judgment shall enter confirming the prior judgment for $62,456 plus interest.