DECISION
The present case was heard by the court without a jury on September 13, 1995. Decision is rendered herein.
Facts
In February of 1991, the plaintiff retained the defendant to represent him in an ongoing divorce proceeding. Prior to defendant entering an appearance as the plaintiff's attorney, a Family Court judge had ordered that the plaintiff and his wife were each to receive a fifty percent interest in the assets of the marriage. Those assets consisted of the marital domicile and a commercial fishing trawler known as the Maxine Grace. On or about January 9, 1991, the plaintiff's wife applied for an order appointing commissioners to sell the boat. On February 19, 1991, the family court appointed William Balkun and Alan Gelfuso as commissioners of the couple's home and boat, respectively. Desmond Connolly of Independent Marine Services, Inc. conducted an appraisal of the boat on March 2, 1991, concluding that its fair market value was $267,300.
The plaintiff hired the defendant in late February of 1991, and the defendant entered his appearance on March 4, 1991. On March 12, 1991, the defendant filed a motion to allow the plaintiff to use the boat while the sale was progressing. The motion was subsequently denied by the Chief Judge of the Family Court on April 19, 1991.
When the parties were unable to reach a settlement concerning the division of their assets, the court ordered Commissioner Gelfuso to list the boat for sale at its appraised value, considering all reasonable offers and presenting them to the court for approval. On May 12, 1991, Commissioner Gelfuso reported on offer of $160,000 to purchase the boat. On June 4, 1991, the court recognized that this offer constituted the only viable offer and ordered the boat sold. The Chief Judge stated that he would rescind the order if the parties could agree on a settlement within forty eight (48) hours, provided they pay the Commissioner's fees. The parties failed to reach any such agreement and on June 6, 1991, the Chief Judge ordered the sale to proceed. The defendant did not attend either the June 4 or June 6 hearing.
The plaintiff subsequently terminated the defendant and retained Attorney Robert Beecher as new counsel in the divorce proceedings. Attorney Beecher advised the plaintiff not to appeal the Chief Judge's decision ordering that the boat be sold. The plaintiff filed the present legal malpractice action against the plaintiff on June 2, 1992.
Elements of Legal Malpractice
Actionable legal malpractice consists of the same basic elements as other kinds of actionable negligence: duty, breach of duty, causation, and damage. Nichols v. Keller, 19 Cal.Rptr.2d. 601, 607 (App. 1993); see also Kennedy v. Tempest, 594 A.2d 385, 388 (R.I. 1991) (negligence action requires proof that defendant owed a duty to plaintiff, breached that duty, and that such breach was the proximate cause of injury to the plaintiff). In order to show that a duty exists in a legal malpractice action, "the plaintiff must establish an employment relationship between himself and the attorney." Church v. McBurney, 513 A.2d 22, 24 (R.I. 1986). The plaintiff must then show a breach of that duty.Id.; see also Holmes v. Peck, 1 R.I. 242, 245 (1849) (legal malpractice plaintiff must show "want of ordinary care and skill" by the defendant). Finally, that breach must proximately cause damages to the plaintiff. Scuncio Motors, Inc. v. Teverow,635 A.2d 268, 269 (R.I. 1993); Evora v. Henry, 559 A.2d 1038, 1039 (R.I. 1989); see also Forrow v. Arnold, 22 R.I. 305, 305-06,47 A. 693, 693 (1900) ("[a]n attorney is liable to his client for the damage resulting as a proximate consequence of his negligence"). The absence of, or failure to prove, any of these four elements is fatal to recovery. Nichols, 19 Cal.Rptr.2d at 607.
In the matter presently before the court, the first element of the plaintiff's cause of action is undisputed. The defendant admits that the two parties entered into an employment relationship. See Defendant's Amended Answer ¶ 4. The defendant thus owed the plaintiff a duty. See Church, 513 A.2d at 24.
In determining whether an attorney has breached the duty owed to a client, a court must initially determine the standard of care governing the attorney's conduct. The general rule is that a lawyer is held to that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in the jurisdiction. See 1 Mallen Smith, Legal Malpractice § 15.2 at 856-57 (3rd ed. 1989). A plaintiff must normally present expert testimony as a means of showing deviance from this standard. SeeFocus Investment Associates Inc. v. American Title Insurance Co.,992 F.2d 1231, 1239 (1st Cir. 1993); Moore v. Lubnau, 855 P.2d 1245, 1249 (Wyo. 1993). Where the record discloses obvious and explicit carelessness in meeting the standard of care, however, expert testimony is not required. See Mallen Smith, supra, § 27.15 at 671; cf. Richardson v. Fuchs, 523 A.2d 445, 447-48 (R.I. 1987) (expert medical testimony unnecessary where physician's lack of care was so obvious as to be within layman's knowledge).
The court believes that expert testimony was unnecessary in the present case. The defendant's failure to appear at the June 4, 1991, hearing constitutes a clear breach of duty. SeeGreenstreet v. Brown, 623 A.2d 1270, 1273 (Me. 1993) (attorney's failure to appear at motion hearing in divorce matter constituted malpractice); Wolstencroft v. Sassower, 507 N.Y.S.2d 728, 729 (App. Div. 1986) (complaint alleging attorney failed to appear to defend divorce action stated valid legal malpractice claim); cf.Lisi v. Biafore, 615 A.2d 473, 475 (R.I. 1992) (attorney disbarred where record showed he repeatedly failed to take action on his clients' cases)[1].
An attorney's breach of duty, standing alone, is insufficient to create liability in a legal malpractice action, however. SeeScuncio Motors, 635 A.2d at 269 (plaintiff must show causal link between defendant's negligence and damages). The plaintiff is required to prove that had the defendant exercised adequate skill and care, the plaintiff probably would have obtained a more successful result at the June 4, 1991, hearing. See Mallen 
Smith, supra, § 27.9 at 652. In an attorney malpractice action, determination of that issue requires the court to conduct a "trial within a trial." See Fishman v. Brooks, 487 N.E.2d 1377, 1380 (Mass. 1986). This determination "is easiest when the outcome in the first case which is at issue in the second case itself depended upon a verdict, for then one can in effect let the parties argue the first case to the second [factfinder]."Chocktoot v. Smith, 571 P.2d 1255, 1257 (Or. 1977). When the probable outcome of the first court's decision rests upon an issue of law, however, the prediction of that outcome in the malpractice action is itself a question of law. See Mallen 
Smith, supra, § 27.23 at 693.
The underlying claim in the present case involves the equitable distribution of property; awards that are judicial, rather than factual, determinations. See Wrobleski v. Wrobleski,653 A.2d 732, 733 (R.I. 1995); see also Helmbrecht v. St. PaulInsurance Co., 343 N.W.2d 132, 136 (Wis. App. 1983) (Cane, J., concurring) (noting family court decisions are generally discretionary in nature). Judicial determinations of this kind are governed by G.L. 1956 (1988 Reenactment) § 15-5-16.1[2], which requires the family court to exercise its discretion effectuating the distribution of property. See Fisk v. Fisk,537 A.2d 418, 421 (R.I. 1988) (family court judge had discretion to order sale of marital domicile). Judicial review of such findings typically involves determination of whether the family court judge's order constituted an abuse of discretion. See, Centazzo v.Centazzo, 509 A.2d 995, 997 (R.I. 1986); Wordell v. Wordell,470 A.2d 665, 667 (R.I. 1984).
In an attorney malpractice action, however, resolution of the causation issue requires the court to determine whether the plaintiff would have obtained a different result had the defendant not breached his duty. See Chocktoot, 571 P.2d at 1258. In order to make this determination, the court must place itself in the position of a reasonable family court judge evaluating the properly presented underlying claim. See McLeod v. Fechtel,821 F.2d 1388, 1389 (9th Cir. 1987) (client in attorney malpractice action required to present evidence that a reasonable family court judge would have reached different result in face of adequate advocacy); Helmbrecht, 343 N.W.2d at 136 (Wis. App. 1983) (Cane, J., concurring) (trial court must determine what a reasonable judge hearing divorce action would have awarded on the original claim).
This court finds that had plaintiff had the benefit of adequate legal representation, a reasonable family court judge would not have ordered the boat sold.[3] The court finds that had the plaintiff been represented by a lawyer exercising that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in Rhode Island, that lawyer would have advised the plaintiff to request permission to purchase the boat for $179,167.50.[4] As this amount is significantly greater than the $160,000 amount ultimately accepted, a reasonable family court judge would have approved the plaintiff's offer.
The defendant argues that because there was no indication that any party was willing to buy the boat for $267,300, the plaintiff has failed to prove damages in this action. This contention overlooks the language of the appraiser's report that "[i]t is not mandatory that a sale actually take place for the evaluation to be valid." In his analysis, the appraiser noted the asking price of comparable boats listed in marine publications, "keeping in mind that many vessels are listed but few sell for the asking price." The appraiser also noted the unfavorable economic conditions existing at the time, specifically in the fishing industry. All of these factors show that the appraiser's figure was more than mere speculation. With these factors in mind, the appraiser concluded that $267,300 was the price that a willing seller would accept for the boat from a willing buyer where both parties were aware of the facts and neither was under duress. The court accepts this figure as a valid and reasonable determination of the amount that the plaintiff would have received had he been advised to purchase, and ultimately decided to sell, the boat.[5] With respect to this purchase, the plaintiff would have expended $179,167.50 for a boat with a fair market value of $267,300. The plaintiff would therefore have realized a gain of $88,132.50.
This calculation does not end the inquiry, however. The proper measure of damages in an attorney malpractice action is the difference between the amount the plaintiff should have recovered and the amount actually recovered. Mallen Smith,supra, § 16.1. As previously determined, the former amount is $88,132.50. Determination of the latter, however, requires further calculation.
The present case is unique because, unlike the typical situation where a legal malpractice plaintiff recovers nothing or a reduced amount due to the attorney's negligence, the defendant's negligence in the divorce matter actually caused the plaintiff to lose money. When the parties sold the boat for $160,000, they faced $179,167 in expenses, a deficit of $19,167, or $9,583.50 each. Regardless of whether the plaintiff was able to satisfy this deficit out of the funds received from the subsequent sale of the marital home, the $9,583.50 represents income foregone as a result of the defendant's negligence. The plaintiff's damages in this action are $97,716, which is the difference between the $88,132.50 gain foregone and the $9,583.50 loss actually realized.
Punitive Damages
The purpose of punitive damages is not to compensate the injured party, but rather to punish the wrongdoer and deter him and others from similar conduct. See Soares v. Ann Hope ofRhode Island, Inc., 637 A.2d 339, 351 (R.I. 1994). Where the underlying circumstances are sufficiently egregious, punitive damages are recoverable in attorney malpractice actions. Mallen 
Smith, supra, § 16.16 at 909-10; see also Annotation, Allowanceof Punitive Damages in Action Against Attorney for Malpractice,
13 A.L.R.4th 95 (1982 Supp. 1995). In the present action, however, the court is not satisfied that the plaintiff has shown sufficient egregiousness to warrant such an award. The plaintiff's request is therefore denied. See Forrow, 22 R.I. at 306-07, 47 A. at 693 (punitive damages improper where no grounds existed for imposition).
Defendant's Counterclaim
The defendant counterclaimed for recovery of attorney's fees. Based on the court's resolution of the plaintiff's claim, however, this request is improper. See Matter of Pearlman,627 A.2d 314, 315 (R.I. 1993) (attorney's retention of full fee constituted overreaching where he performed "little or no work");see also Fiedler v. Adams, 466 N.W.2d 39, 43 (Minn. App. 1991) (where attorney breaches fiduciary duty to client, attorney forfeits right to full compensation). The defendant's counterclaim is therefore denied.
With respect to all of the above, counsel shall submit the appropriate order for entry.
[1] Lisi involved a violation of Rule 1.3 of the Rules of Professional Conduct. 615 A.2d at 475. The court recognizes the general rule that violation of a disciplinary rule does not, in and of itself, constitute an actionable breach of duty. SeeFishman v. Brooks, 487 N.E.2d 1377, 1381 (1986). The violation may, however, be considered as evidence of the attorney's negligence. Id.
[2] The Legislature repealed this section in 1992, adopting P.L. 1992, ch. 269, § 2, in its place. Because this court must analyze the plaintiff's underlying claim as a "reasonable family court judge," the court is guided by the authorities governing the parties' rights at the June, 4, 1991, hearing. See Chocktoot,
571 P.2d at 1258 (second court's determination of first trial governed by "law as it was at the time").
[3] The Fisk decision does not compel a contrary result. InFisk, the court found that the trial judge did not abuse his discretion in ordering the marital domicile sold where the parties "were stubbornly resistant to any amicable solution." 537 A.2d at 421. As previously noted, this court is not reviewing the family court judge's order under the abuse of discretion standard, but rather is evaluating the underlying claim as a reasonable family court judge considering the issue as if it had been properly presented. See Chocktoot, 571 P.2d at 1258 ("the issue in a malpractice case is what the outcome should have been if the issue had been properly presented").
[4] This is the minimum amount at which the plaintiff could have paid off the boat's mortgage ($158,000) and the Commissioner's fees ($21,167.50). As this amount would have satisfied the plaintiff's wife's share of those liabilities, the court finds that a reasonable family court judge would have found it to be an acceptable offer.
[5] The fact that Commissioner Gelfuso received only a $160,000 offer to purchase the boat does not diminish the validity of the appraiser's conclusion. Because the parties were obligated to sell the boat quickly, the resulting offer bears little, if any, relation to fair market value. See Sommerfield v. Sommerfield,454 N.W.2d 55, 60-61 (Wis. App. 1990) (fair market value of assets in divorce proceeding assumes sale will involve "one who desires but is not obligated to sell"); Keeton v. State,774 S.W.2d 716, 717 (Tex. App. 1989) (fair market value is amount that property would sell for, "given a reasonable time for selling it").