COMMERCE OIL REFINING CORPORATION *vs.* WILLIAM W. MINER *et al.*

APRIL 13, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

ROBERTS, J. This petition for a declaratory judgment was brought pursuant to the provisions of G. L. 1956, chap. 30 of title 9. The petitioner therein asked, first, whether an action for malicious use of process is an action for injury to the person within the meaning of G. L. 1956, §9-1-14, and is barred by the provisions of said statute if not

brought within two years after the cause of action has accrued and, second, whether a cause of action for malicious use of process brought against it in the federal district court is barred by the provisions of said statute. The petition was heard by a justice of the superior court, who entered a decree answering each question in the negative, and from that decree the petitioner has prosecuted its appeal to this court.

It appears that petitioner in 1957 had instituted a civil action in the United States District Court for the District of Rhode Island against a group of residents of the town of Jamestown on the island of Conanicut, who are hereinafter referred to as the respondents. In this action petitioner sought damages for an alleged conspiracy to obstruct the erection of an oil refinery pursuant to a license to do so issued by the appropriate officers of the town of Jamestown and an injunction prohibiting respondents from interfering with the erection of such refinery. The respondents filed a counterclaim in that action for a declaration that said license was invalid and for an injunction against the erection of the refinery as a potential nuisance. When this action was reached for trial in the district court, petitioner abandoned its complaint, which was dismissed with prejudice, and trial proceeded on the counterclaim with a decision therein for the instant respondents. The Court of Appeals for the First Circuit thereafter reversed the decision of the district court, and the counterclaim was dismissed. *Commerce Oil Refining Corp.* v. *Miner,* D.C.R.I., 1959, 170 F. Supp. 396, rev'd 1 Cir., 1960, 281 F.2d 465, cert. den. 364 U. S. 910.

Immediately after denial of certiorari by the supreme court respondents initiated an action in the federal district court on three counts, two of which were dismissed on petitioner's motion for failure to state a cause of action. The petitioner's motion to dismiss the remaining count on the ground that an action for malicious use of process is

16

barred by the provisions of §9-1-14 was denied by the district court. The petitioner thereupon filed the instant petition for declaratory judgment, and further proceedings ensued in the federal district court resulting in the issuance thereby of a decree enjoining petitioner from prosecuting this petition, which subsequently on appeal to the circuit court was vacated. *Commerce Oil Refining Corp.* v. *Miner,* 303 F.2d 125.

The petitioner urges and respondents appear to concede that before this court is only the issue of whether the trial justice erred in concluding that an action for the malicious use of process is not an injury to the person within the meaning of that phrase as used in §9-1-14 and, therefore, that the action of respondents in the federal district court is not barred because it was brought more than two years after the accrual of the cause of action set out therein. This issue is stated by the propounding of two questions. One inquires, "Is a cause of action for malicious prosecution based upon malicious use of process within the meaning of 'actions for injuries to the person' of General Laws of Rhode Island, 1956, Sec. 9-1-14 and barred by said statutory provision if not brought within two years after said cause of action has accrued?" The second inquires, "Is the cause of action set out in Count II of the Complaint in 'William W. Miner, et al v. Commerce Oil Refining Corporation, C.A. No. 2721,' (the 1960 case) barred by General Laws of Rhode Island, 1956, Sec. 9-1-14?"

The issue presented to us for decision clearly points up the ambiguity of the statutory language "injuries to the person." It leaves obscure the legislative intent as to what injuries are within that phrase. In short, did the legislature contemplate applying the two-year limitation to actions arising from bodily or physical injuries only or to apply it broadly to actions brought to recover damages arising out of the restriction, invasion, or impairment of rights and privileges which are personal to the suitor?

The statute under immediate consideration, §9-1-14, reads: "Actions for words spoken shall be commenced and sued within one (1) year next after the words spoken, and not after. Actions for injuries to the person shall be commenced and sued within two (2) years next after the cause of action shall accrue, and not after." Similar statutory limitations on the institution of actions are prescribed in §9-1-15, which provides that "Actions of trespass, except for injuries to the person, shall be commenced and sued within four (4) years next after the cause of action shall accrue, and not after," and in §9-1-16, which, in pertinent part, reads: "* * * all actions of the case except for words spoken and for injuries to the person * * * shall be commenced and sued within six (6) years next after the cause of action shall accrue, and not after."

It is clear from the statutory provision above quoted that the legislature intended that all actions containing a common element, that is, injury to the person, were to be subjected to a two-year period of limitation and this whether the action was brought in trespass or case. Prior to 1902 the legislature had based the period of limitation on the form of the action brought and not on the nature of the injury that resulted from the tortious conduct. Actions of trespass, that is, for injury resulting from direct or intentional tortious acts, were barred if not commenced within four years, while actions of the case for indirect or unintentional injury were barred if not commenced within a period of six years. G. L. 1896, chap. 234, secs. 2 and 3. The legislature for the first time in 1902 undertook to limit the commencement of actions on the basis of the character of the injury that resulted rather than on the form of action. The pertinent legislation provided that actions for injuries to the person were barred unless brought within two years from the time of the accrual thereof whether in trespass or case. P. L. 1902, chap. 976, secs. 1 and 2. In 1905, in enacting the Court and Practice Act,

the legislature, continuing the two-year period of limitation upon all actions for injuries to the person without regard to whether the form of the action was in trespass or of the case, C.P.A. 1905, sec. 248, put the statute in the form in which it appears now. G. L. 1956, §9-1-14 et seq.

The term "injuries to the person" is not defined in the statute, nor has this court ever attempted to enumerate specifically what injuries other than physical might be held to be within the meaning of that term. It is true that in *Griffin* v. *Woodhead,* 30 R. I. 204, this court said that injuries other than physical could be included within the meaning of such language, referring to two prior decisions in so holding. An examination of the prior cases discloses, however, that the statutes construed therein differed so substantially from the instant statute that they have little value as precedent here. An examination of those cases in fact has persuaded us that to construe the instant statute on the basis of a definition of the phrase "injuries to the person" would be to verge upon speculation with reference to the legislative intent.

We are here construing a statute that is ambiguous only as to the meaning to be given the words "injuries to the person." The clear purpose of the legislation was to reduce substantially the time within which actions could be commenced in a particular class of cases involving injury to the person and this was to be accomplished in large measure by an abandonment of the distinction between actions of trespass and of the case. We are required then to give effect within reason to such express intention of the legislature by construing the term "injuries to the person" consistently with that legislative purpose. Statutory construction in this jurisdiction basically is the ascertainment of the legislative intent "from a consideration of the language, nature and purpose of a statute." *Chaharyn* v. *Department of Employment Security,* 85 R. I. 75, 79. The obligation of this court as it is stated in *Long* v. *Fugere,* 56 R. I. 137, 142,

is "to give language that meaning which will give effect to the otherwise express intent of the statute, rather than one which will strip ordinary words of their plain meaning and thus nullify and destroy the dominant intent of the statute as a whole."

The express or dominant intent of the instant statute, as we have noted, was to limit the commencement of actions involving injuries to the person to a period of two years from the accrual thereof, and, we reiterate, to include within that period actions for such injuries, whether a result of conduct that was intentional or unintentional. In brief, the statute contemplates that an action for injuries resulting from bodily mutilation inflicted in the course of an assault, for example, was to be subject to the same period of limitation as would an action involving injuries resulting from a mutilation inflicted by reason of ordinary negligence. We are of the opinion that this abandonment of the distinction between actions for injuries that are intentional and those that are unintentional is highly significant of the legislative intention as to the scope to be given to the term "injuries to the person."

In our opinion it is significant of a legislative intent to enact a comprehensive statute and to include within the two-year period of limitations all actions that reasonably could be viewed as arising out of injuries to the person. It becomes then our duty under the rule stated in *Long* v. *Fugere, supra,* to give to the words "injuries to the person" such a meaning as will give effect to the legislative intent to enact a comprehensive statute of limitations. The language under consideration, in our opinion, may be construed to encompass actions arising out of injuries other than physical and thus give a statute of limitations a comprehensive application without doing violence to the natural meaning of such words. We would, in fact, find it difficult to view the limitation of the term to physical injury as being other than a disregard of the plain and ordinary meaning

of the phrase as it is used in the context in which it appears in the statute.

The plain meaning of language must, of course, depend upon the context in which it is used. The respondents here, in urging a literal reading of the phrase "injuries to the person," clearly assume that such a literal reading posits restrictive interpretation. With this we cannot agree, being of the opinion that a literal reading of statutory language may in fact disclose that it was employed to connote comprehensiveness. In short, language, when read literally, may connote either inclusion or exclusion depending on the context in which it appears as well as its relationship to the purpose for which the statute was enacted. The ordinary meaning of the statutory language is to be ascertained in the light of its use in an exercise of the legislative power as intended to give effect to the purpose for which that power was so exercised. It has been aptly said: "Even where words of ordinary language are used, such words can often be understood in a broad as well as a narrow sense. It would, under these circumstances, be an oversimplified solution of the problem if statutory interpretation were to be subjected to the test of the ordinary and natural meaning of language as understood by the man of average intelligence." Bodenheimer, Jurisprudence: The Philosophy and Method of the Law, at p. 363 (1962).

It is then our conclusion that the phrase "injuries to the person" as used in the instant statute is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be

distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property.

We are of the opinion that an action for malicious use of process is for an injury to the person within the meaning of the pertinent statutory provision. One of the basic personal rights of man as a member of society is the right to be free from any unwarranted application to him of juridical sanction to compel compliance with those norms of conduct established by society for the preservation of social order and security of the state. Such a misuse of legal process acts directly upon the person of the individual even though in some secondary sense it may act also upon a right or privilege extrinsic to the person. A misuse of process need not result inevitably in humiliation or degradation of the individual affected thereby to be held to constitute an injury to the person, it being the nature of the right invaded and not the elements of damage resulting therefrom that determines its character as an injury to the person.

In reaching this conclusion we have not overlooked *Senn* v. *Kogut*, 79 R. I. 429. That was an action for alienation of affections wherein we said at page 436: "The instant action is an action of the case but is not for words spoken or for personal injuries." To alienate the affections of a spouse is not to invade a right inhering in the person of the other spouse but rather it is an invasion of a right that accrued to such spouse by reason of the marital relationship. As we said in *Hargraves* v. *Ballou*, 47 R. I. 186, 189: "The wrong done in alienation of affections is the deprivation of the spouse of the right to the aid, comfort, assistance and society of the other spouse *in family relationships.*" (italics supplied) We are aware also that in *Desjourdy* v. *Mesrobian*, 52 R. I. 146, this court held that an action for the loss of the services of one's wife by reason of her physical injury was barred by the two-year statute of limita-

tions. It is to be noted, however, that the action was trespass on the case for negligence to recover for the inability of the spouse to provide services as a consequence of sustaining bodily injury through the defendant's negligence.

It is the conclusion of this court that an action for malicious prosecution based upon malicious use of process is an injury to the person within the meaning of G. L. 1956, §9-1-14, and that pursuant to the terms thereof such action is barred if not commenced and sued upon within two years after the cause of action accrues.

The petitioner's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a new decree in accordance with this opinion.

*Letts & Quinn, Daniel J. Murray, Jerome B. Spunt,* for petitioner.

*Moore, Virgadamo, Boyle & Lynch, Cornelius C. Moore, Salvatore L. Virgadamo, Francis J. Boyle, Jeremiah C. Lynch, Jr., Higgins & Slattery, James A. Higgins, William C. Dorgan,* for respondents.