Rebecca CHURCH

v.

John F. McBURNEY.

No. 85–86–Appeal.

Supreme Court of Rhode Island.

July 31, 1986.

Edward F. St. Onge, Johnston, for plaintiff.

Christine L. McBurney, Robert J. Rahill, Rahill & Rahill, Pawtucket, for defendant.

## OPINION

KELLEHER, Justice.

In this civil action for legal malpractice, a Superior Court justice certified the following question to this court pursuant to G.L. 1956 (1985 Reenactment) § 9–24–27:[1] Which statute of limitations applies to an action for legal malpractice—§ 9–1–14, which prescribes a three-year limitation upon actions for "injuries to the person," or § 9–1–13, which, at the time this suit was filed, prescribed a six-year limitation upon all civil actions not otherwise specially provided for.[2]

According to an agreed statement of facts filed by the parties, the following circumstances gave rise to this question. The plaintiff, Rebecca Church, a Rhode Is-

land resident, sustained injuries in an automobile collision in the Province of Ontario, Canada. Brenda Abrams, the driver of the other vehicle, was a resident of New York State. Church alleged that she consulted and retained defendant John McBurney as an attorney shortly after the accident to secure restitution for these injuries. The statute of limitations in Ontario for automobile negligence was one year. Suit was not filed within that year. Church filed suit for professional malpractice against McBurney in Rhode Island Superior Court on March 20, 1975, within the six-year period of limitations prescribed by § 9–1–13 but not within the three-year period prescribed by § 9–1–14.

To answer the question posed to us, we must determine if legal malpractice constitutes an "injury to the person" for purposes of § 9–1–14.

In making this determination, we are again guided by the construction provided in *Commerce Oil Refining Corp. v. Miner*, 98 R.I. 14, 21, 199 A.2d 606, 610 (1964), in which we found an action for malicious use of process to fall within the parameters of § 9–1–14 even though it did not result in bodily or physical injury. In *Commerce Oil* we stated that

"the phrase 'injuries to the person' * * * is to be construed comprehensively and as contemplating its application to actions involving injuries that are other

---

1. General Laws 1956 (1985 Reenactment) § 9–24–27 provides:

   "**Certifications of questions of importance to the supreme court.**—Whenever in any proceedings, civil or criminal, legal or equitable, in the superior court or in any district court, any question of law shall arise, or the constitutionality of an act of the general assembly shall be brought in question upon the record, which in the opinion of the court, or in the opinion of the attorney-general, if the state be a party to such proceeding or if he has intervened therein, is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify such question or motion to the supreme court for that purpose and stay all

   further proceedings until the question is heard and determined; Provided, That no question shall be so certified in any criminal case where the defendant has not been released on bail."

2. At the time this suit was filed, G.L.1956 (1969 Reenactment) § 9–1–13 provided that "[e]xcept as otherwise specially provided, all civil actions shall be commenced within six (6) years" after the cause of action shall accrue. This limitation period was extended to ten years by P.L.1978, ch. 299, § 2 (codified at G.L.1956 (1985 Reenactment) § 9–1–13).

   Section 9–1–14 provided then, as it does now, that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years" after the cause of action shall accrue.

than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." *Id.* at 20–21, 199 A.2d at 610.

Finding misuse of legal process to act directly upon the person of an individual, it being "[o]ne of the basic personal rights of man as a member of society * * * to be free from * * * unwarranted application to him of juridical sanction to compel compliance with those norms of conduct established by society," the court noted that it is "the nature of the right invaded and not the elements of damage resulting therefrom that determines [the] character [of an action] as an injury to the person." *Id.* at 21, 199 A.2d at 610.

Church characterizes her right to receive damages on her cause of action as an intangible property right—a "chose in action"— and argues that the loss of that right is therefore not an "injury to the person." McBurney, on the other hand, contends that Church's right to bring action against Abrams for the injury she suffered in the automobile accident is a right to which she was entitled by virtue of being a person in the eyes of the law.

Both parties, however, focus on the specific damage resulting from McBurney's alleged malpractice—the loss of Church's action against Abrams—rather than upon the nature of the right actually being sued upon in this action for legal malpractice— Church's right to be properly and nonnegligently represented by McBurney, the attorney of her choice. This right accrued to Church by virtue of the attorney-client relationship allegedly established between the parties, a relationship that our case law indicates is contractual in nature. *See, e.g.,*

*State v. Austin,* 462 A.2d 359, 362 (R.I. 1983) (attorney-client relationship is the product of an agreement of the parties and may be implied from their conduct); *Lake v. Winfield Fuller Co.,* 54 R.I. 358, 360, 173 A. 119, 120 (1934) (client has the right to discharge his attorney at any time, with or without cause, subject to responsibility for the consequences of the breach of the contract of employment); *McLyman v. Miller,* 52 R.I. 374, 375, 161 A. 111, 112 (1932) (attorney is an agent employed by a party to a case to manage the same for him or her). Absent this contractual relationship, McBurney would have owed Church no duty. *Oleyar v. Kerr,* 217 Va. 88, 90, 225 S.E.2d 398, 399 (1976). Thus, it has been held that the gravamen of an action for attorney malpractice is "the negligent breach of [a] contractual duty" and that in order to maintain such an action, whether brought in tort or in contract, the plaintiff must establish an employment relationship between him/or herself and the attorney. *Flaherty v. Weinberg,* 303 Md. 116, 134, 492 A.2d 618, 627 (1985); *Guy v. Liederbach,* 501 Pa. 47, 55, 459 A.2d 744, 750 (1983); *see also Barrett v. Burt,* 250 F.Supp. 904, 905 (S.D.Iowa 1966); *Riddle v. Driebe,* 153 Ga.App. 276, 279, 265 S.E.2d 92, 94 (1980).

The right being sued upon by Church therefore did not "inhere" in her "by reason of being a person in the eyes of the law," but by reason of her contractual relationship with McBurney. Under *Commerce Oil,* the invasion of such a right does not constitute an injury to the person. *Cf. Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 150, 282 A.2d 584, 588 (1971) (although tortious injury was an incidental element in an insured's suit against his insurer over a policy contract, action was fundamentally one in contract since plaintiff would have no action were it not for coverage provided by that policy).

The fact that this action is ostensibly one in tort does not offend our conclusion that it is not one for "injury to the person." In

*Commerce Oil* the court specifically endorsed the holding in *Senn v. Kogut*, 79 R.I. 429, 89 A.2d 842 (1952), to the effect that an action for alienation of affections, though an action "of the case," was not one for personal injuries and also stressed that "[t]o alienate the affections of a spouse is not to invade a right inhering in the person of the other spouse but rather it is an invasion of a right that accrued to such spouse by reason of the marital relationship." *Commerce Oil Corp.*, 98 R.I. at 21, 199 A.2d at 610.

Similarly here, Church's rights accrued to her by virtue of her attorney-client relationship with McBurney, which, as we have seen, was grounded in contract.

This contractual relationship distinguishes this controversy from *McDonald v. Rhode Island General Council*, 505 A.2d 1176 (R.I.1986), where we recently found an action against a municipal union for breach of its fiduciary duty of fair representation to a union member to "fall within the broad parameters of § 9-1-14," even though the injury suffered did not "[fall] squarely within the * * * *Commerce Oil* definition of 'injury to the person.'" *Id.* at 1180. As we noted in *McDonald*, a municipal union's duty to its members is statutory in origin, deriving from its statutory position as the " 'sole and exclusive negotiating or bargaining agent for all of the municipal employees in such appropriate bargaining unit' " under G.L.1956 (1979 Reenactment) § 28-9.4-1, by virtue of which "a public employee is precluded from pursuing a grievance on his own behalf." *Id.* at 1178; *see Belanger v. Matteson*, 115 R.I. 332, 338, 346 A.2d 124, 129 (1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). The statutory, as distinguished from the contractual, nature of this duty of fair representation has been stressed by federal courts considering the question of federal jurisdiction over suits to remedy its breach brought under the National Labor Relations Act, 29 U.S.C.A. §§ 151 through 159 (1973), and the Labor Management Relations Act, 1947, 29 U.S.C.A. §§ 141 through 144 (1973). *See Smith v. Local No. 25, Sheet Metal Workers International Association*, 500 F.2d 741, 746 (5th Cir. 1974).

Furthermore, in *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), in which the United States Supreme Court first found a duty of fair representation to be mandated by legislation that provided for exclusive employee representation by a labor organization, and upon which we relied in *Belanger* when we established a similar duty in Rhode Island, the Court noted that to convey such a power without requiring a commensurate duty would raise constitutional questions:

> "For the representative is clothed with power not unlike that of a legislature which is subject to constitutional limitations on its power to deny, restrict, destroy or discriminate against the rights of those for whom it legislates and which is also under an affirmative constitutional duty equally to protect those rights." *Id.* at 198, 65 S.Ct. at 230, 89 L.Ed. at 181.

The Court found the Railway Labor Act, the act involved in *Steele*, to impose upon the statutory representative of a craft "at least as exacting a duty to protect equally the interests of the members of the craft as the Constitution imposes upon a legislature to give equal protection to the interests of those for whom it legislates." *Id.* at 202, 65 S.Ct. at 232, 89 L.Ed. at 183.

Such an analogy to constitutional rights only reinforces our conclusion in *McDonald* that the right of a municipal union member to fair representation by his or her exclusive bargaining agent bears a sufficient relationship to his or her rights as "a person in the eyes of the law" so that a breach of that right qualifies as an "injury to the person." *Cf. Partin v. St. Johnsbury Co.*, 447 F.Supp. 1297, 1301 (D.R.I.1978); *Walden III, Inc. v. State of Rhode Island*, 442 F.Supp. 1168, 1172–73 (D.R.I.1977) (violations of 42 U.S.C.A. §§ 1981 and 1983, respectively, constitute injury to the person,

plaintiff's right to recover deriving from basic constitutional rights protected in a federal statute).

Here, however, in an action for legal malpractice, the duty involved is not statutory, nor does it have constitutional implications; it rests, as we have seen, on contract, and as such an action for its breach falls squarely within the exception to the "injuries to the person" principle enunciated in *Commerce Oil.*

Admittedly in the past there have been occasions when medical-malpractice actions have been described as actions for injury to the person. *Wilkinson v. Harrington,* 104 R.I. 224, 228, 243 A.2d 745, 748 (1968); *Griffin v. Woodhead,* 30 R.I. 204, 206, 74 A. 417, 417 (1909). Furthermore, in G.L. 1956 (1985 Reenactment) § 9–1–14.1, enacted later expressly to cover medical-malpractice actions, the Legislature in effect acknowledged that such actions were "injuries to the person" but specified that they were to be treated differently from those covered by § 9–1–14 regarding when the cause of action accrued.[3] We do not, however, agree with McBurney that we must similarly find actions for legal malpractice to be governed by § 9–1–14. McBurney has cited cases in other jurisdictions to support his contention that legal- and medical-malpractice actions should be treated alike. In those jurisdictions, however, malpractice actions were expressly governed by separate statutes of limitation; they were held to encompass both legal and medical malpractice. *See, e.g., Cordial v. Grimm,* 169 Ind.App. 58, 66–67, 346 N.E.2d 266, 271–72 (1976); *Sam v. Balardo,* 85 Mich.App. 20, 23, 270 N.W.2d 522, 523 (1978); *Johnson v. Haugland,* 303 N.W.2d 533, 537–38 (N.D.1981).

Here we have no such express legislation; our statutory structure requires us to determine if legal malpractice qualifies as an injury to the person. Medical malpractice, involving as it does pure physical injury, obviously falls into this category, and the Legislature has spoken to that effect in § 9–1–14.1. Legal malpractice does not easily fall into this category; *Commerce Oil* must be applied to determine if it is one of those actions involving injuries "other than physical" to which § 9–1–14 applies. Following those guidelines, we have determined that it is not.

We therefore conclude that § 9–1–13 applies to actions of legal malpractice, requiring them to be brought within six years of the accrual of the action as the statute then applicable required, and remand the papers in this case to the Superior Court for further proceedings.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.

---

**3.** General Laws 1956 (1985 Reenactment) § 9–1–14.1 provides as follows:

"**Limitation on medical malpractice actions.**—Notwithstanding the provisions of § 9–1–14, an action for medical malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action; Providing, however, that:

(a) One who is under disability by reason of age, mental incompetence or otherwise, and on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident, shall bring said action within three (3) years from the removal of said disability.

(b) In respect to those injuries due to acts of medical malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of medical malpractice should, in the exercise of reasonable diligence, have been discovered."