April 24, 2024

**Supreme Court**

No. 2023-67-Appeal.
No. 2023-68-Appeal.
(WC 21-568)

The Preserve at Boulder Hills, LLC,          :
    et al.

         v.                                    :

Laura Kenyon, in her capacity as          :
Finance Director for the Town of
    Richmond, et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2023-67-Appeal.
No. 2023-68-Appeal.
(WC 21-568)

The Preserve at Boulder Hills, LLC,  :
      et al.

             v.            :

Laura Kenyon, in her capacity as  :
Finance Director for the Town of
    Richmond, et al.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** These appeals arise out of a dispute between the Town of Richmond (the town)[1] and a group of developers (plaintiffs or The Preserve).[2] Following a hearing on the town's motion to dismiss and for judgment on the pleadings pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure, the Superior Court dismissed the plaintiffs' claims for violations of substantive due process, tortious interference with contract, tortious interference

---

[1] The named defendants are the Finance Director of the Town of Richmond, the President of the Richmond Town Council, and members of the Richmond Town Council in their official capacities.

[2] The plaintiffs are The Preserve at Boulder Hills, LLC; The Preserve at Boulder Hills II, LLC; The Preserve at Boulder Hills III, LLC; The Preserve at Boulder Hills IV, LLC; M.T.M. Investment Group L.P.; and Castle Residences, LLC. The plaintiffs own a total of 756.53 acres in the development.

with prospective business advantages, civil liability for crimes and offenses pursuant to G.L. 1956 § 9-1-2, and a violation of the civil Racketeer Influenced and Corrupt Organizations (RICO) statute pursuant to G.L. 1956 chapter 15 of title 7. Before this Court are both an appeal by the plaintiffs and a cross-appeal by the town.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

We derive the following facts from plaintiffs' first amended complaint. For the purpose of a Rule 12(c) motion, "we confine ourselves to the four corners of the complaint, assume that the allegations set forth are true, and resolve any doubts in favor of the complaining party." *Montaquila v. Flagstar Bank, FSB*, 288 A.3d 967, 971 (R.I. 2023) (quoting *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017)).

In 2011, plaintiffs entered into an agreement for the purchase of the original 178 acres in the development, identified as Assessors' Plat No. 6B, lot No. 4 in Richmond, Rhode Island. Prior to closing, plaintiffs informed the town that they intended to operate an outdoor shooting range and gun club on the property, which was a permitted use in the planned development zone. At public hearings, both the planning board and town council informed plaintiffs that an indoor gun range "would

be an even more acceptable use." The plaintiffs thereafter closed on the property and began marketing the property by highlighting recreational activities, which included an indoor and outdoor shooting range; they additionally began selling memberships based upon their marketing campaign.

In 2014, plaintiffs met with the town planner to discuss plans for an indoor and outdoor shooting range. At that time, plaintiffs learned that, under a recent zoning ordinance amendment, indoor and outdoor shooting ranges were no longer permitted uses in the planned development zone. The plaintiffs further discovered that most of their planned outdoor recreational uses were no longer permitted uses and that many commercial and residential uses had also been eliminated. The plaintiffs had not been given notice of the proposed zoning amendments.

Subsequently, in 2016, a new zone—the Preserve Resorts District—was created, covering the majority of plaintiffs' property. Under the new zoning regime, indoor and outdoor shooting ranges were once again permitted. The plaintiffs indicated that this two-year delay for the restoration of various permitted uses caused them to lose substantial revenue including the sale of memberships and properties.

Additionally, Assessors' Plat No. 5B, lot No. 38, which is the portion of property owned by The Preserve at Boulder Hills III, LLC, was subject to a 1,000-foot buffer zone prohibiting the use of all-terrain recreational vehicles and largely rendering that property "unusable." There was also a 100-foot buffer around

the whole district property, which prohibited plaintiffs from cutting trees or otherwise developing the land in that buffer. These buffers impeded the use of plaintiffs' property until they were eliminated in 2019.

Prior to the elimination of the buffers and under the restrictions of the earlier zoning amendment, plaintiffs proceeded with development of the resort. By November 2015, a clubhouse with a restaurant and banquet facility, golf course, tennis facility, trails, and fishing ponds were near completion. The plaintiffs then applied for a 150-room hotel, conference center, and related structures. The plaintiffs were charged a $500 pre-application fee and a master plan application fee of $15,050; they also paid for a traffic study costing $8,500. As a condition of master plan approval, the town required plaintiffs to pay for peer review of the traffic study ($3,000), peer review of the wetlands and wastewater system designs ($5,891), and evaluation of the town's water system and the water supply for the resort ($4,800). According to plaintiffs, these requirements increased their expenses and delayed the project. The plaintiffs received master plan approval for the hotel project "in or about May 2016[.]"

Subsequently, plaintiffs submitted their preliminary application package to the town for the same project and were required to pay another application fee of $15,050. When plaintiffs submitted their final submission, they were required to pay an additional $7,527.50. The plaintiffs asserted that these fees, totaling $38,137

in application fees and $22,191 in peer-review fees, were arbitrary and constituted obtaining money under false pretenses "for the benefit of the consultants retained by the [t]own to perform the peer review." Additionally, plaintiffs alleged that, when submitting their preliminary application package, they informed the town that their financing would expire at the end of July 2016. Despite knowing about plaintiffs' financing deadline for the hotel, the planning board did not schedule its first hearing until August 2016, after the financing had expired. The plaintiffs indicated that this delay caused them financial damages and substantial harm.

The plaintiffs submitted that unreasonable delays continued in the hearing process. On October 11, 2016, the planning board approved the preliminary plan for a five-story hotel with 150 rooms, a conference center, a 132-seat restaurant, a pool area, an outdoor game area, an outdoor seasonal dining area, and 5,000 square feet of retail space. On February 8, 2017, plaintiffs received final approval of the land development for the project, including the hotel.

The plaintiffs pointed to several other actions by the town that increased their costs, which included: the town's failure to remove boulders on a public road and resulting access issues for construction; the town's interference with plaintiffs' purchase of a parcel facilitating access to landlocked property; the town's "arbitrary and capricious" peer-review requirements; and the town's "purposeful, arbitrary and capricious waffling" on various approvals needed by plaintiffs. The plaintiffs

additionally alleged that the town's planner, Sean Lacey, admitted that plaintiffs were "treated unfairly and prejudiced."

The plaintiffs filed the instant action on December 16, 2021. On October 6, 2022, plaintiffs filed a first amended complaint. The plaintiffs asserted claims for violation of their substantive due-process rights under the Rhode Island Constitution (count one); tortious interference with contract (count two); tortious interference with prospective business advantages (count three); civil liability for crimes and offenses (count four); and violation of the civil RICO statute under G.L. 1956 chapter 15 of title 7 (count five).

The town filed an answer on February 4, 2022. The town then filed a motion to dismiss and for judgment on the pleadings pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure or, in the alternative, a motion for summary judgment. A hearing on that motion was held on November 1, 2022.

The town raised six affirmative defenses in support of its Rule 12(c) motion: (1) inadequate notice; (2) statute of limitations; (3) legislative immunity; (4) the public-duty doctrine; (5) the voluntary payment doctrine; and (6) failure to exhaust administrative remedies. As to the merits, the town argued that plaintiffs' claims for violations of substantive due process and tortious interference should be dismissed as a matter of law. As to plaintiffs' claims for civil liability for a crime and RICO, the town argued that the amended complaint did not assert sufficient facts for a prima

facie case. The plaintiffs disputed each affirmative defense in their objection, and they argued that the town failed to satisfy the standard for either dismissal and judgment on the pleadings or summary judgment.

The hearing justice issued a written decision on December 12, 2022. The hearing justice began his decision by addressing each of the town's affirmative defenses. The hearing justice first determined that the notice of claim sent by plaintiffs to the town was sufficient. With regard to the statute of limitations, the hearing justice found that the substantive due-process claim and the tortious interference claims were subject to a three-year statute of limitations and that the continuing tort doctrine did not apply. He therefore determined that those claims (counts one through three) were barred because plaintiffs did not file their action until December 16, 2021. Additionally, because the civil liability claim for crimes and the RICO claims did not have specified statutes of limitation, the hearing justice determined that a ten-year statute of limitations applied.

As to legislative immunity, the hearing justice found that the town council members were protected by such immunity in enacting zoning amendments. He also indicated that the amendments to the buffer zones set out in the zoning ordinances were subject to legislative immunity; however, the town's other actions were not entitled to legislative immunity.

As to the public duty doctrine, the hearing justice determined that it would protect the town only against the tortious interference claims. He further found that the voluntary pay doctrine applied because "it is difficult to find that [p]laintiffs were not aware of all the facts" when paying fees to the town prior to the hearings being delayed. He additionally determined that plaintiffs were not required to exhaust administrative remedies because "[p]laintiffs have not raised a cause of action that has an administrative remedy[.]"

The hearing justice then examined whether plaintiffs had set forth a prima facie case with respect to their claims. Although he found that the first three counts were barred by the statute of limitations, he "nonetheless analyze[d] [p]laintiffs' claims asserted in their [a]mended [c]omplaint to determine if any or all of them state a claim upon which relief could be granted if such affirmative defenses did not exist." He determined that the allegations in the amended complaint did not indicate conduct on the part of the town that shocked the conscience and that, therefore, plaintiffs could not succeed on their substantive due-process claim. He noted that approvals of plaintiffs' applications were issued within the statutory time frames and that the peer-review requirements were not egregious. As to the tortious interference claims, the hearing justice found that the facts set out in the amended complaint did not show improper interference by the town.

In addressing the civil liability claim, the hearing justice determined that plaintiffs did not plead sufficient facts to support a claim of obtaining money under false pretenses, and he dismissed the claim. The hearing justice likewise dismissed the civil RICO claim, because he found that the facts alleged were insufficient to establish obtaining money under false pretenses relative to the peer-review consultants.

The hearing justice granted the town's motion to dismiss and for judgment on the pleadings on all counts, and an order to that effect entered on January 10, 2023. Final judgment entered the same day. The plaintiffs filed a timely notice of appeal, and the town filed a cross-appeal on January 17, 2023.

## II

## Standard of Review

"A judgment on the pleadings under Rule 12(c) * * * provides a trial court with the means of disposing of a case early in the litigation process when the material facts are not in dispute after the pleadings have been closed and only questions of law remain to be decided." *Premier Home Restoration, LLC v. Federal National Mortgage Association*, 245 A.3d 745, 748 (R.I. 2021) (quoting *Nugent v. State Public Defender's Office*, 184 A.3d 703, 706 (R.I. 2018)). "We review the granting of a Rule 12(c) motion for judgment on the pleadings under the same test we utilize to review a Rule 12(b)(6) motion to dismiss." *Id.* "Therefore, a judgment on the

pleadings 'may be granted only when it is established beyond a reasonable doubt that a party would not be entitled to relief from the defendant under any set of conceivable facts that could be proven in support of its claim.'" *Id.* (quoting *Nugent*, 184 A.3d at 706-07).

Furthermore, "in reviewing the trial justice's legal determinations, this Court has a 'prerogative to affirm a determination of a trial justice on grounds different from those enunciated in his or her decision,' as well as a prerogative to overturn such a determination on different grounds." *Miller v. Metropolitan Property and Casualty Insurance Co.*, 111 A.3d 332, 339 (R.I. 2015) (brackets omitted) (quoting *John Marandola Plumbing & Heating Co. v. Delta Mechanical, Inc.*, 769 A.2d 1272, 1275 (R.I. 2001)).

## III

## Discussion

On appeal, plaintiffs submit that the hearing justice committed four errors: (1) in ruling that plaintiffs failed to state claims for crimes and offenses (count four) and civil RICO (count five); (2) in determining that plaintiffs failed to state claims for tortious interference (counts two and three); (3) in failing to apply this Court's prior holdings that the public duty doctrine does not apply to intentional torts; and (4) in finding that plaintiffs' claims are barred by the voluntary payment doctrine.

The town cross-appealed, claiming defective and insufficient notice and arguing that the three-year statute of limitations barred *all* of plaintiffs' claims, not just the claims for substantive due process and tortious interference. The town additionally submits that plaintiffs failed to exhaust their administrative remedies and that the town, as a government entity, cannot be held liable under § 9-1-2 or the civil RICO statute.

At the crux of these appeals are issues concerning the statutes of limitations. Two statutes at play are § 9-1-25(a), which governs "claims in tort" against the town, and § 9-1-14(b), which pertains to "injuries to the person"; both provide for a three-year limitations period. Also relevant is § 9-1-13(a), which establishes a catch-all statute of limitations of ten years. Section 9-1-25(a) provides in pertinent part:

> "[I]n cases involving actions or claims in tort against the state or any political subdivision thereof or any city or town, the action shall be instituted within three (3) years from the effective date of the special act, or within three (3) years of the accrual of any claim of tort. Failure to institute suit within the three-year (3) period shall constitute a bar to the bringing of the legal action."

Section 9-1-14(b) states that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue * * *." Finally, § 9-1-13(a) requires that "[e]xcept as otherwise specially provided, all civil

actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after."

In his decision, the hearing justice applied the three-year statute of limitations set forth in § 9-1-14(b) to plaintiffs' substantive due-process claim. The hearing justice then applied the three-year statute of limitations set forth in § 9-1-25(a) to plaintiffs' two claims for tortious interference. Finally, as to the claim for civil liability for crimes and offenses and the claim for civil RICO, the hearing justice found that the ten-year statute of limitations governed.

On appeal, plaintiffs assert that the hearing justice erred in finding that the three-year statute of limitations barred their claims for tortious interference, because the continuing tort doctrine applied to those claims and thus tolled the statute of limitations. The plaintiffs submit that, in finding the allegations in the complaint to be separate and distinct acts, the hearing justice improperly drew inferences in favor of the town. As to their claims for civil liability for crimes and offenses and civil RICO, plaintiffs assert that the hearing justice correctly found that the ten-year statute of limitations governs because the claims are neither "claims in tort" nor "injuries to the person."

In its cross-appeal, the town agreed with the hearing justice that plaintiffs' first three counts—substantive due process, tortious interference with contract, and tortious interference with prospective business advantages—were barred by the

- 12 -

three-year statute of limitations. However, the town asserts that the two remaining counts—civil liability for crimes and offenses and civil RICO—should have also been barred. Specifically, the town submits that these claims were subject to the three-year statute of limitations under either § 9-1-25(a) or § 9-1-14(b).

The limitations issues before us are two-fold. First, we must determine whether plaintiffs' claim for civil liability for crimes and offenses and their claim for civil RICO are "claims in tort," as argued by the town. If not, the ten-year limitations period obtains. We must then determine whether the three-year statute of limitations has been tolled as to plaintiffs' claims for tortious interference.

The plaintiffs submit that counts four and five—crimes and offenses and civil RICO—stem from their allegation that "the [t]own engaged in conduct that amounts to larceny—namely, collecting 'substantial fees and assessments from The Preserve under false pretenses' and 'through the establishment and/or operation of an enterprise * * * consisting of certain purported consultants and third party contractors retained by the [t]own[.]'" (Footnote omitted.) They argue that, based on their allegations, these are not "claims in tort" and that the hearing justice correctly applied the ten-year statute of limitations. In response, the town uses plaintiffs' assertion that the claims amount to larceny to argue that "[c]laims of fraud and deceit, whether or not they are considered to be 'injuries to the person[,]' are

certainly 'claims in tort'" and, further, that "[p]laintiffs' claims concerning larceny or misappropriation also sound in tort." We address each of the counts in turn.

The plaintiffs' claim for civil liability for crimes and offenses is governed by § 9-1-2, which states:

> "Whenever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made; and whenever any person shall be guilty of larceny, he or she shall be liable to the owner of the money or articles taken for twice the value thereof, unless the money or articles are restored, and for the value thereof in case of restoration."

In their amended complaint, plaintiffs alleged that "[t]he [t]own collected substantial fees and assessments from [plaintiffs] under false pretenses" in violation of § 9-1-2.

In dispute is the applicability of our holding in *Commerce Park Realty, LLC v. HR2-A Corp.*, 253 A.3d 868 (R.I. 2021). Both the hearing justice and plaintiffs rely upon this case to support the imposition of the ten-year statute of limitations to this claim; the town disputes this assessment. In *Commerce Park Realty*, the plaintiff sought damages pursuant to § 9-1-2, and the defendant moved for summary judgment, arguing that the plaintiff's claim was barred by the ten-year statute of limitations. *Commerce Park Realty, LLC*, 253 A.3d at 877. The hearing justice agreed, and this Court affirmed that decision, stating:

- 14 -

"The provision setting forth the statute of limitations for civil actions, including those brought pursuant to § 9-1-2, plainly states, 'except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after.' Section 9-1-13(a). Because the cause of action accrued in December 2000, and the complaint was not filed until April 2011, [the] plaintiffs' claims under § 9-1-2 are barred by the ten-year statute of limitations set forth in § 9-1-13(a)." *Id.* at 879 (brackets omitted).

In contrast, however, the case before us involves a suit against a municipality rather than a private entity. *See id.* at 871. Additionally, our review of *Commerce Park Realty* reveals that no dispute existed as to the applicable statute of limitations that this Court would have had the opportunity to address. *See generally id.* Indeed, without a state or municipal defendant, the applicability of § 9-1-25(a) was not an issue in that matter. Therefore, our holding in *Commerce Park Realty* is inapposite to the issue at bar.

A tort encompasses injury to the person and to property—it is "a civil wrong * * * for which the law will provide a remedy in the form of an action for damages." 74 Am. Jur. 2d *Torts* § 1 (February 2024 Update).

"A 'tort' constitutes an invasion of a private interest for which the plaintiff seeks compensation for the damage they have personally suffered and a judgment to fairly allocate the loss. On the other hand, a 'crime' is an invasion of the interests of the people as a whole, and a criminal prosecution acts to protect and vindicate the public interest, and a judgment thereon functions to punish and rehabilitate the defend[ant]." *Id.*

- 15 -

Here, certainly, plaintiffs brought a *civil* action in order to "seek[] compensation for the damage they have personally suffered * * *." *Id.*

Additionally, in analyzing whether a claim constitutes a personal injury, this Court has broadly defined personal injury, but excluded such interests created by contract or property. *See Commerce Oil Refining Corporation v. Miner*, 98 R.I. 14, 20-21, 199 A.2d 606, 610 (1964). The claim of civil liability for crimes was not created by a contract or a property interest. Indeed, in their complaint, plaintiffs asserted that the underlying crime for this count is obtaining money under false pretenses. This Court has pronounced that obtaining money under false pretenses includes an intent to cheat or *defraud*. *See State v. Doyle*, 235 A.3d 482, 515 (R.I. 2020). We have also stated: "Fraud is usually a tort, but in some cases (especially when the conduct is willful) it may be a crime." *Pleasant Management, LLC v. Carrasco*, 918 A.2d 213, 219 n.8 (R.I. 2007) (brackets omitted) (quoting Black's Law Dictionary 685 (8th ed. 2004)). Because the underlying wrongful act for this claim—obtaining money under false pretenses—is a tort, we hold that count four is barred by the three-year statute of limitations under § 9-1-25(a).

Racketeering activity under the RICO act is outlined in G.L. 1956 chapter 15 of title 7. Section 7-15-2 defines the prohibited activities, which include:

> "(a) It is unlawful for any person who has knowingly received any income derived directly or indirectly from a racketeering activity or through collection of an unlawful debt, to directly or indirectly use or invest any part of that

- 16 -

income, or the proceeds of that income in the acquisition of an interest in, or the establishment or operation of any enterprise.

"(b) It is unlawful for any person through a racketeering activity or through collection of an unlawful debt to directly or indirectly acquire or maintain any interest in or control of any enterprise.

"(c) It is unlawful for any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt.

"(d) Provided, that a purchase of securities on the open market for purposes of investment and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, is not unlawful under this section if the securities of the issuer held by the purchaser, the members of his immediate family, and his or her or their accomplices in a racketeering activity or the collection of an unlawful debt after the purchase do not amount in the aggregate to one percent (1%) of the outstanding securities of any one class, and do not, either in law or in fact, confer the power to elect one or more directors of the issuer."

Section 7-15-4(c) provides:

"Any person injured in his, her, or its business or property by reason of a violation of this chapter may sue in any appropriate court and shall recover treble damages and the cost of the suit, including a reasonable attorney's fee. In order for an injured person to recover pursuant to this subsection, it is not necessary to show that the defendant has been convicted of a criminal violation of this chapter."

This Court has yet to substantively pass on a civil RICO action, nor has it opined on the issue of whether civil RICO is a tort. However, at least three federal appellate

courts have classified civil RICO as a tort, under the federal RICO statute. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1189 (4th Cir. 1988), *abrogated on other grounds by Quackenbush v. Allstate Insurance Company*, 517 U.S. 706 (1996) ("Civil RICO is of course a statutory tort remedy—simply one with particularly drastic remedies."); *Reynolds v. East Dyer Development Company*, 882 F.2d 1249, 1253 (7th Cir. 1989) ("Civil RICO is a statutory tort, so causation principles that generally apply in tort cases apply in civil RICO cases."); *Kaufman v. BDO Seidman*, 984 F.2d 182, 185 (6th Cir. 1993) (same). Although the federal RICO statute is not identical to our own, the list of prohibited activities is sufficiently similar, and it likewise provides for an individual bringing a civil suit. *See* 18 U.S.C. §§ 1962, 1964.

Furthermore, like plaintiffs' allegation of civil liability for crimes, the civil RICO claim was not created by a contract or a property interest. Indeed, the underlying wrongful act for this claim is also obtaining money under false pretenses. We therefore hold that count five is barred by the three-year statute of limitations under § 9-1-25(a). Accordingly, counts four and five are time-barred.

We turn next to whether the three-year statute of limitations was tolled. The plaintiffs assert that the hearing justice erred in finding that the three-year statute of limitations barred their claims for tortious interference (counts two and three). Specifically, they argue that the continuing tort doctrine applied to those claims, and

therefore tolled the statute of limitations, given that their amended complaint demonstrated that the town's actions constituted a "continuous, related, repeated and ongoing pattern and practice of discriminatory conduct." In response, the town contends that the three-year statute of limitations was not tolled.

"Under the continuing tort doctrine, where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 602 (R.I. 2019) (quoting 54 C.J.S. *Continuing Torts* § 223 at 258 (2010)). When applicable, the continuing tort doctrine allows a plaintiff to recover for the entire period of the defendant's tortious actions. *See* 54 C.J.S. *Limitations of Actions* § 222 (March 2024 Update).

The plaintiffs now ask this Court to review their complaint and conclude that, in finding the allegations in the amended complaint to be separate and distinct acts, the hearing justice improperly drew inferences in favor of the town. In making this argument, plaintiffs point us to portions of their amended complaint that they allege demonstrate that the town "engaged in a continuous, related, repeated and ongoing pattern and practice of discriminatory conduct." First, plaintiffs direct us to paragraphs fourteen through sixteen of their amended complaint, which allege:

> "14. The Preserve brings this action after years of consistent and repeated discriminatory conduct by [the town] and its elected and appointed officials, *which continues to the present*, and which as a continuing

- 19 -

deprivation of The Preserve's rights, has *caused and continues to cause The Preserve substantial harm* and damages. By way of example, the [t]own's wrongful, tortious, discriminatory, arbitrary and capricious actions and omissions, *inter alia*, have substantially and unnecessarily driven up the cost of The Preserve's development of its property, slowed down the regulatory approval process, stifled and/or interfered with The Preserve's use of its property, caused The Preserve to lose a significant financing opportunity and *continues to cause* The Preserve to unnecessarily and detrimentally alter financing arrangements, conditions and terms. The [t]own's discriminatory conduct, at times, has been clear and direct and, at other times, has been shrouded by pretext as the [t]own attempted to justify or excuse its otherwise discriminatory conduct. The [t]own also engaged consultants and others who worked with certain appointed and/or elected [t]own officials to continuously and purposefully frustrate The Preserve's legitimate development efforts.

"15. The [t]own's discriminatory conduct has purposefully spanned across numerous areas of regulatory procedure and governance, including taxation, permitting, planning and zoning.

"16. Although The Preserve's claims of illegal and discriminatory taxation are *not the specific subject of this Complaint*, they are related to the claims asserted herein, and are also relevant background to the pattern and practice of wrongful conduct by the [t]own and are separately pending before this Court via 15 petitions for Tax Year 2020 and 18 petitions for Tax Year 2021 filed pursuant to R.I. Gen. Law § 44-5-26 as a result of the [t]own' s illegal and disproportionate assessment of real property taxes on various properties located within The Preserve's Master Development, further illustrating the [t]own's continued discriminatory treatment of The Preserve and other property owners within The Preserve,

and further demonstrating the [t]own's tortious plan to harm The Preserve." (Emphasis added.)

The plaintiffs additionally point us to paragraph sixty-one of the complaint, which alleges:

> "Over The Preserve's many years of dealings with the [t]own, [t]own elected and appointed officials, and authorized representatives and agents of the [t]own, made representations and gave assurances to The Preserve, which were subsequently disavowed both publicly and privately by successor elected and appointed officials, resulting in not only confusion but also delay and expense to The Preserve."

Building on that argument, plaintiffs submit that their complaint is "premised on a continuing pattern of conduct" and that the question of "whether the facts are sufficient to trigger the continuing violation doctrine or, instead, are discrete events * * * should be addressed on summary judgment after discovery."

Although this Court has seldom had the opportunity to address the continuing tort doctrine, in *Boudreau* this Court noted that we had "declined to apply the continuing violation doctrine to an age discrimination case when the underlying act was 'a discrete act' and held that any alleged claims of discrimination after that act did not toll the running of the statute of limitations, but were merely continuing consequences of that single act." *Boudreau*, 212 A.3d at 603 (citing *Croce v. State, Office of Adjutant General*, 881 A.2d 75, 79 (R.I. 2005)). In *Boudreau*, this Court again refused to apply the continuing tort doctrine, because just such a discrete act

- 21 -

had occurred when the defendant installed tracking software on the plaintiff's work computer. *Id.* at 604.

Our review of the complaint and, in particular, the specific portions that plaintiffs direct us to in order to show a "continuing or repeated injury," lead us to the conclusion that, like *Boudreau*, the *harm* that continues to present is the consequence of separate and discrete acts that had previously occurred. *See Boudreau*, 212 A.3d at 602. Indeed, the alleged wrongful conduct underlying the tortious interference claims appears to have ended on February 8, 2017, when plaintiffs received final approval on the land development for the resort, including the hotel. The complaint contains no specific reference to injury after that date, beyond alleging that the town "continues to cause The Preserve substantial harm and damages."

Even assuming that all of the allegations in the amended complaint are true and viewing the facts in the light most favorable to plaintiffs, our review of the complaint indicates that the harm still allegedly present is "merely continuing consequences of" the separate and distinct acts that plaintiffs allege occurred prior to February 8, 2017. *See Boudreau*, 212 A.3d at 603. Notably, in listing its counts, plaintiffs submit for count two that:

> "The [t]own tortiously interfered with [contracts for properties and services that The Preserve had with its members] by interfering with The Preserve's ability to honor its contracts, have the members use and enjoy their

properties, and provide the services and amenities that The Preserve had promised to its members, based upon prior assurances that The Preserve had been given by the [t]own."

As for count three, plaintiffs claim that:

"The [t]own knew or should have known about the prospective business advantages that The Preserve had with potential members who were planning to purchase properties, services and amenities at The Preserve and with lenders of The Preserve concerning, *inter alia*, actual and prospective contracts for membership services, property ownership, services and amenities and lending relationships to service such business advantages of The Preserve.

"[] The [t]own tortiously interfered with The Preserve's prospective business advantages and relationships."

There is no indication, for either count, that there is a basis for a "continuing or repeated injury" sufficient to toll the limitations period.

The facts pled are insufficient to show that the two counts of tortious interference—tortious interference with contracts and tortious interference with prospective business advantages—were a "continuing or repeated injury" to plaintiffs beyond February 8, 2017. The plaintiffs, however, filed the complaint in this action more than three years later, on December 16, 2021.

Accordingly, we hold that the statute of limitations was not tolled. Therefore, albeit on different grounds than those relied upon by the hearing justice, we affirm the grant of the town's motion to dismiss and for judgment on the pleadings.[3]

## IV

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.

---

[3] Because we conclude that each of the plaintiffs' claims are barred by the statute of limitations, we need not address the remaining issues.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | The Preserve at Boulder Hills, LLC, et al. v. Laura Kenyon, in her capacity as Finance Director for the Town of Richmond, et al. |
| **Case Number** | No. 2023-67-Appeal.<br>No. 2023-68-Appeal.<br><br>(WC 21-568) |
| **Date Opinion Filed** | April 24, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>John A. Tarantino, Esq.<br>For Defendants:<br><br>James P. Marusak, Esq. |